Sandra C. SCHULTZ and Robert C. Braun, Plaintiffs,

v.

Russell FRISBY, George E. Hunt, Robert Wargowski, Harlan Ross, Clayton A. Cramer, and the Town of Brookfield, Defendants.

Civ. A. No. 85-C-1018.

United States District Court, E.D. Wisconsin.

Oct. 7, 1985.

Walter M. Weber, Associate Gen. Counsel, and Steven Frederick McDowell, Gen. Counsel, Catholic League for Religious and Civil Rights, Milwaukee, Wis., for plaintiffs.

George A. Schmus, West Allis, Wis., for defendants.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This is an action to enjoin the enforcement of an anti-picketing ordinance.

Plaintiffs Sandra C. Schultz and Robert C. Braun filed a complaint on July 2, 1985, under § 1983 of Title 42 U.S.C., seeking declaratory, preliminary, and permanent injunctive relief from an alleged deprivation of their rights under the First and Fourteenth Amendments of the United States Constitution. Defendants in the action are Russell Frisby and George Hunt, Supervisors of the Town Board of Brookfield, Wisconsin; Robert Wargowski, Chairman of the Town Board; Harlan Ross, Chief of the Brookfield Police; Clayton Cramer, attorney for the Town of Brookfield; and the Town of Brookfield itself.

The plaintiffs wish to picket on streets in a residential neighborhood in Brookfield. They challenge the enforcement of a town ordinance which bans such picketing. This court has jurisdiction under 28 U.S.C. § 1343.

At the hearing for a preliminary injunction held on August 13, 1985, the Court considered the facts contained in the following submissions: (1) plaintiffs' proposed statement of facts; (2) defendants' proposed statement of facts; (3) §§ 9.05, 9.06, 9.08, 9.09, 9.10, 9.17, 9.943.13, 9.943.14, and 9.947.01 of the General Code, Town of Brookfield; (4) a plat map of the Summit Lawn Estates and Black Forest Knoll, Town of Brookfield; (5) a photocopy of a story and accompanying photograph in the May 21, 1985, edition of the Milwaukee Sentinel; and (6) affidavits of Mary T. Baxa, Robert C. Braun, Mary E. Bruders, Reid Brueser, Scott M. Heitman, William B. Peterman, Sandra C. Schultz, Daniel J. Schwantz, Charles Setzke, Mary Setzke, David Setzke, Paula W. Smith, Arlene Victoria, Todd A. Victoria, and Audrey Wright.

Based on the above-cited materials and on the oral arguments, I make the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Plaintiffs Sandra Schultz and Robert Braun believe that abortion is immoral and unjust. Between April 20 and May 20, 1985, Schultz, Braun, and groups of prolife demonstrators, ranging in size from 11 to more than 40 persons, have on at least six occasions picketed in front of the home of Dr. Benjamin M. Victoria who performs abortions at facilities in Appleton and Milwaukee.

The Town of Brookfield is a residential suburb of the City of Milwaukee and has a population of approximately 4,300 persons. The Town's police force consists of a chief and eight officers. The street on which the Victoria family lives is within a subdivision of the Town zoned exclusively for single-family residences. The road surfaces in the subdivision are approximately 30 feet

wide and blacktopped. During the winter the roads are narrowed further by snow piles which accumulate due to plowing. There are no sidewalks, curbs, gutters, or street lights.

On May 7, 1985, the Town of Brookfield enacted an ordinance which provided as follows:

9.17 RESIDENTIAL PICKETING . . .

(2) PICKETING RESIDENCE OR DWELLING UNLAWFUL. It is unlawful for any person to engage in picketing before or about the residence or dwelling of any individual. Nothing herein shall be deemed to prohibit (a) picketing in any lawful manner during a labor dispute of the place of the place [sic] of employment involved in such labor dispute, or (b) the holding of a meeting or assembly on any premises commonly used for the discussion of subjects of general public interest.

On the following day, defendant Town Attorney Cramer informed plaintiff Schultz that he had instructed defendant Chief of Police Ross not to enforce the new ordinance pending Cramer's research into its constitutionality. The results of this research apparently led to the repeal of the above ordinance and the passage on May 15, 1985, of a substitute ordinance as § 9.17, General Code, Town of Brookfield, which provides as follows:

9.17 RESIDENTIAL PICKETING. (1) DECLARATION. It is declared that the protection and preservation of the home is the keystone of democratic government; that the public health and welfare and the good order of the community require that members of the community enjoy in their homes and dwellings a feeling of well-being, tranquility, and privacy, and when absent from their homes and dwellings, carry with them the sense of security inherent in the assurance that they may return to the enjoyment of their homes and dwellings; that the practice of picketing before or about residences and dwellings causes emotional disturbance and distress to the occupants; obstructs and interferes with the free use of public sidewalks and public ways of travel; that such practice has as its object the harassing of such occupants; and without resort to such practice full opportunity exists, and under the terms and provisions of this chapter will continue to exist for the exercise of freedom of speech and other constitutional rights; and that the provisions hereinafter enacted are necessary for the public interest to avoid the detrimental results herein set forth. . . .

(2) PICKETING RESIDENCE OR DWELLING UNLAWFUL. It is unlawful for any person to engage in picketing before or about the residence or dwelling of any individual in the Town of Brookfield.

(3) PENALTY FOR VIOLATIONS. Any person violating the provisions of this section of the Town Code of the Town of Brookfield shall upon conviction for a first offense forfeit not less than $5 nor more than $300.00, together with the costs of prosecution, and in default of payment of such forfeiture and costs of prosecution, shall be imprisoned in the County Jail until such forfeiture and costs are paid, but not to exceed 30 days.

Any person who shall be guilty of violating this section of the Town Code of the Town of Brookfield who has previously been convicted of a violation thereof within one year, shall upon conviction thereof forfeit not less than $100.00 nore [sic] more than $500.00 for each such offense, together with the costs of prosecution and in default of payment of such forfeiture and costs, shall be imprisoned in the County Jail until such forfeiture and costs are paid, but not exceeding 90 days.

The General Code of the Town of Brookfield includes a number of ordinances designed to preserve peace and order in the community. These include §§ 9.05 Obstructing Streets and Sidewalks, 9.06 Loud and Unnecessary Noise Prohibited, 9.08 Loitering Prohibited, 9.09 Destruction of Property Prohibited, 9.10 Littering Prohib-

ited, 9.943.13 Criminal Trespass to Land, 9.943.14 Criminal Trespass to Dwelling, and 9.947.01 Disorderly Conduct.

On May 18, 1985, defendant Cramer informed plaintiffs that he had instructed the Brookfield Chief of Police to enforce the new ordinance beginning on its effective date, May 21, 1985. Plaintiffs continued picketing the Victoria residence through May 20 but have refrained from picketing since that time for fear of arrest and prosecution under the new ordinance.

The picketing seems to have been conducted for the most part in a peaceable and orderly fashion. The Town police never had occasion to make an arrest, though this may be a function of the limited surveillance they were able to conduct. On at least one occasion picketers entered onto the Victoria property to tie red ribbons to shrubbery growing there, place a protest sign at the front door of the Victoria house, and tie another red ribbon to the front door knob.* Mrs. Victoria and one of the Victoria children claim that on one occasion the picketers temporarily prevented them from leaving their residence. The Victorias also believe that picketers photographed their children and residence.

The picketers carried signs with a variety of inscriptions including "Stop Abortion Now," "Aborted Babies Sold for 'Cosmetics,'" "Abortion is Legal Murder," "God Bless America," and "Forgiveness Is Yours for the Asking." Picketers on occasion sang and cheered or shouted other slogans that witnesses say include references to Victoria as a "baby killer." Picketers conversed with passers-by, including at least one neighbor who was told that Victoria was a baby killer. The parent and grandparent of a five-year-old child claim that a woman carrying a cross, who was marching with other picketers to the Victoria home, told the child that a baby killer lived nearby and that the child should not go to the Victoria house. The child apparently became frightened following this encounter

and would not leave his grandparent's home for the remainder of the day.

Some of the picketers belong to an anti-abortion group in the Milwaukee area where many of them live. Others come from the area of Appleton, a city about 100 miles north of Milwaukee where one of Dr. Victoria's clinics is located. The picketers chose the Victoria residence as a target for picketing because, in the words of plaintiff Schultz:

> [p]icketing at locations at which Victoria performs abortions would not accomplish what picketing on the public street by his house can accomplish. Moreover, the greater media coverage of residential picketing allows us to reach audiences who might not otherwise receive our messages. As an additional concern, we do not wish to interefere with efforts of sidewalk counselors to contact prospective abortion clients; picketing near the Victorias' residence (away from the site of the abortions) removes the possibility of such problems, while more effectively conveying our messages to the abortionist and those in his community.

Affidavit of Sandra Schultz (filed July 17, 1985) at 4. Both print and electronic news media in the Milwaukee metropolitan area have covered the picketing which took place at the Victoria residence.

## CONCLUSIONS OF LAW

A district court may issue a preliminary injunction only after the moving party demonstrates that—

> (a) it has at least a reasonable likelihood of success on the merits, (2) it has no adequate remedy at law and will otherwise be irreparably harmed, (3) the threatened injury to it outweighs the threatened harm the preliminary injunction may cause the defendants, and (4) the granting of the preliminary injunction will not disserve the public interest.

*Syntex Ophthalmics, Inc. v. Tsuetaki*, 701 F.2d 677, 681 (7th Cir.1983) (quoting *Ma-*

---

* At the oral argument, plaintiffs' counsel explained that the red ribbons were symbols used

by the anti-abortionists from Appleton, Wis.

*chlett Laboratories, Inc. v. Techny Industries, Inc.,* 665 F.2d 795, 796–97 (7th Cir. 1981).

 I find on the facts above that plaintiffs are entitled to a preliminary injunction against the enforcement of the Town of Brookfield's residential picketing ordinance. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Libertarian Party of Indiana v. Packard,* 741 F.2d 981, 985 (7th Cir.1984) (quoting *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976) (plurality opinion)), for which a legal remedy is inadequate. The injury defendants would sustain by virtue of a preliminary injunction seems relatively small. Granting the injunction would not disserve the public interest. The only real issue here is whether plaintiffs are reasonably likely to succeed on the merits. I conclude that they are.

## I. *Protected Activity*

Picketing, as a means of expressing one's opinion on a public issue, "has always rested on the highest rung of the hierarchy of First Amendment values." *Carey v. Brown,* 447 U.S. 455, 467, 100 S.Ct. 2286, 2293, 65 L.Ed.2d 263 (1980). No less than the door-to-door distribution of handbills, picketing is "essential to the poorly financed causes of little people." *See Martin v. City of Struthers,* 319 U.S. 141, 146, 63 S.Ct. 862, 865, 87 L.Ed. 1313 (1943).

## II. *Public Forum*

 It is settled law that public places associated historically with the exercise of free speech, such as streets, parks, and sidewalks, are to be regarded as public forums. *United States v. Grace,* 461 U.S. 171, 177, 103 S.Ct. 1702, 1706–07, 75 L.Ed.2d 736 (1983). Residential streets in neighborhoods where there are neither sidewalks nor street lights are just as much associated with free expression as are the central squares of our cities and towns. *See Carey v. Brown,* 447 U.S. at 460, 100 S.Ct. at 2289–90.

## III. *Standard*

The test for permissible time, place, and manner regulation of speech in a public forum has been restated recently by the United States Supreme Court:

In ... quintessential public forums, the government may not prohibit all communicative activity.... The State may ... enforce regulations of the time, place and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.

*Perry Education Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983). The defendants have presented no authority suggesting that single family, residential surroundings make a public street anything less than a quintessential public forum. Therefore, this ordinance must pass the *Perry* four-pronged test.

## A. *Content Neutral*

The ordinance here in question is content neutral. All residential picketing, regardless of the cause on behalf of which it is conducted, is unlawful in the Town of Brookfield. I see little merit in plaintiffs' argument that an implied exception for labor picketing must be read into an ordinance, the legislative history of which shows a precisely contrary intent.

## B. *Significant Interest*

 No doubt the interests which the Town of Brookfield seek to advance by this ordinance are significant. The safety of picketers and passers-by is a serious concern where streets are narrow, there are no sidewalks, and traffic may be heavy. The Town also has an interest in preserving domestic privacy.

Preserving the sanctity of the home, the one retreat to which men and women can repair to escape from the tribulations of their daily pursuits, is surely an important value ... [and] ... [t]he State's interest in protecting the well-being,

tranquility, and privacy of the home is certainly of the highest order in a free and civilized society.

*Carey v. Brown*, 447 U.S. at 471, 100 S.Ct. at 2295. Speech may be regulated to protect privacy. *See Martin v. City of Struthers*, 319 U.S. at 148, 63 S.Ct. at 865–66. Such interests are significant enough to justify narrowly tailored time, place, and manner regulation of communicative conduct.

## C. *Not Narrowly Tailored*

The Town of Brookfield's ordinance is not, however, narrowly tailored to advance these interests. It completely bans all picketing in residential neighborhoods. One can imagine neutral time, place, and manner regulations short of a ban on residential picketing, which would go a long way toward the Town's safety and domestic privacy goals. It might be possible to meet safety concerns, for example, by limiting the time of picketing and the number of persons who may picket at one time. In Wisconsin at least, winter road conditions may make it appropriate to impose some form of seasonal restriction as well. The privacy and tranquility of domestic life can be secured without totally banning picketers from the streets of residential neighborhoods, because some types of peaceful picketing have a negligible impact on privacy interests. *Carey v. Brown*, 447 U.S. at 469, 100 S.Ct. at 2294–95. Picketing can be limited to certain hours. A limit on the number of picketers who may assemble at a residence at a given time would further reduce the intrusiveness of picketing. An absolute ban, however, against a form of protected speech cannot be permitted to stand.

Much communicative activity in an open, and largely urban, society intrudes upon personal life and disturbs its tranquility. This is at once an unavoidable weakness and a great strength of free speech as it is practiced in this country.

The authors of the First Amendment knew that novel and unconventional ideas might disturb the complacent, but they chose to encourage a freedom which they believed essential if vigorous enlightenment was ever to triumph over slothful ignorance.

*Martin v. City of Struthers*, 319 U.S. at 143, 63 S.Ct. at 863.

## D. *Alternatives*

Because defendants' ordinance fails the "narrowly tailored means" prong of the test, it is unnecessary to determine whether plaintiffs have open to them ample alternative channels of communication. I remark only that the crucial word here seems to be "ample." If "ample" means that alternative channels for plaintiffs' speech must be equally effective to allow plaintiffs to stir up the Victoria family, the family's neighbors, the Town of Brookfield, and the City of Milwaukee and allow plaintiffs to garner as much publicity, then this prong of the test cannot be satisfied here and will hardly ever be satisfied. Picketing subject to legal challenge will almost always attract more media attention than picketing that is not. Thus, if an alternative channel must be "ample" in the sense that it affords the same publicity to speech as does the challenged channel, then speech which more intrudes on people's privacy and is more outrageous (and therefore, unfortunately, more newsworthy) will be for these reasons more likely to receive the protection of the First Amendment. This would be a regrettable development in our First Amendment jurisprudence.

If, on the other hand, "ample" means only that alternative channels must allow plaintiffs to communicate the whole substance of their ideas and emotions to all who are willing to listen, then it seems to me that plaintiffs have such alternative channels in this case. They may distribute leaflets in the Victorias' neighborhood, *Martin v. City of Struthers*, 319 U.S. at 146–49, 63 S.Ct. at 865–66; they may march past the Victoria home, *see Gregory v. Chicago*, 394 U.S. 111, 89 S.Ct. 946, 22 L.Ed.2d 134 (1969); and, of course, they may picket other more public sites.

I conclude, nevertheless, that the Town of Brookfield's residential picketing ordi-

nance is likely to fail the test of a constitutional time, place, and manner regulation of speech in a public forum, and that plaintiffs, therefore, are reasonably likely to succeed on the merits and are thus entitled to a preliminary injunction.

Accordingly, for all the reasons stated,

IT IS THEREFORE ORDERED that the plaintiffs' motion for a preliminary injunction be and hereby is granted, and the defendants are enjoined from enforcing § 9.17(2) of the ordinances of the Town of Brookfield.

IT IS FURTHER ORDERED that if the defendants do not appeal and the court does not receive within sixty days from the filing date of this order a request in writing from either party for a trial on the plaintiffs' request for a permanent injunction, the preliminary injunction issued today will become permanent, and judgment will be entered in favor of the plaintiffs and against the defendants without further notice from the court.