**Nora GARCIA et al.,
Plaintiffs-Appellants,**

v.

**William .GRAY et al.,
Defendants-Appellees.**

**No. 74–1156.**

United States Court of Appeals,
Tenth Circuit.

Argued Oct. 23, 1974.

Decided Dec. 17, 1974.

---

540

Sanford Jay Rosen, Mexican American Legal Defense and Educational Fund, San Francisco, Cal. (Vilma S. Martinez, Mexican American Legal Defense and Educational Fund, San Francisco, Cal., and Richard C. Bosson, Mexican American Legal Defense and Educational Fund, Albuquerque, N. M., on the brief) for plaintiffs-appellants.

John P. Eastham, Albuquerque, N. M. (Watson & Watson, Artesia, N. M., on the brief) for defendants-appellees.

The Mountain States Regional Office, American Civil Liberties Union and The New Mexico Municipal League, Inc., submitted briefs, amici curiae.

Before SETH, BARRETT and DOYLE, Circuit Judges.

BARRETT, Circuit Judge.

This appeal is from the judgment of the United States District Court for the District of New Mexico denying plaintiffs'-appellants' prayer that Ordinance 347 of the City of Artesia, New Mexico, making it unlawful "for any person to engage in picketing before or about the residence or dwelling of any individual" be declared unconstitutional in violation of the First and Fourteenth Amendments to the United States Constitution and that the defendants-appellees be restrained from enforcing said ordinance. Jurisdiction is predicated upon 28 U.S.C. § 1343(3) and (4). The claim is alleged to arise under 42 U.S.C. § 1983 as an action to redress deprivations under color of State law.

The appellees are the mayor and the eight members of the City Council of the City of Artesia. The genesis of the dispute arose in the refusal by the appellees to recognize a particular union as bargaining agent for some 39 city employees, classified in the record as steelworkers, and the subsequent picketing.

The picketing was initiated when some 39 City of Artesia employees undertook a strike when the Mayor and councilmen refused to recognize a particular union as the bargaining agent for said employees. Thereafter, others joined the strikers, particularly in protest against alleged racial discrimination in employment practices by the City against Chicanos and want of programs or efforts to upgrade job opportunities or job promotions of Chicanos and to alleviate their low income, poverty status. The protestors—including those sympathetic with the desires of the strikers—testified that their grievances were either not heard by the appellees or, if heard, not seriously considered. The strikers-protestors did picket the City Hall, the City Warehouse and the City Disposal Plant. By reason thereof, the appellees and many of the residents of the City testified that they became fully aware of the complaints of the appellants.

The appellants testified, however, that no response or "hearing out" was ever afforded them by the appellees by reason of these activities and that they concluded that the only way to effectively present their grievances and to induce action was to proceed to the residences of the Artesia city officials where they hoped to be heard and speak with these officials personally. Appellants testified that such picketing, at reasonable hours, would be their only effective and persuasive tool under the circumstances. On the other hand, the Mayor and the Councilmen testified that each and all of the picketers-protestors were invited to attend council meetings where they were always provided a forum to express their views.

The appellants presented evidence that 95% of the City's work force at the time of the strike were Chicanos and Blacks, but after the strikers were fired the new city employee group consisted of some 60% Whites, 5% Chicanos, and only 3 Blacks. In effect, they argue that this, ipso facto, evidences racial discrimination. The appellees denied that any racial discrimination was practiced at any time. The merits of this dispute were not at issue before the trial court and are not at issue on this appeal. They are recited simply to demonstrate that the differences involved both a labor dispute in terms of union recognition, together with a variety of discriminatory complaints.

When the strikers-protestors determined to picket the residences of appellees, Mayor Thompson testified that on one such occasion some 300 "picketers" appeared outside of his home, on the sidewalk and lawn, with signs and noisy chants of "Down with the Mayor" which endured for about one and one-half hours. He said that it was very disturbing, upsetting, and worrisome to him, his wife and his neighbors. He testified concerning one other protest in front of his residence which involved a large number of cars, some parked bumper to bumper next to the curb of his residence and others racing their motors with sliding wheels, coupled with many honking horns and noisy car occupants. He said

this demonstration was upsetting to him, his wife and his neighbors. He testified that his wife's health became very "bad" as a result of the picketing and that she was "under" medication for some time.

Similar residential "picketing" occurred at the residence of Councilman Floyd Economides which, on one such occasion, involved a picket sign which he testified read "Creep, remember you have a wife and kids." He testified that the demonstration was very disturbing, disruptive and noisy for him, his wife, children and neighbors.

Councilman Price testified that during the picketing of his residence he, his wife and three children, ages 13, 10 and 6 were disturbed in their privacy and that the same disruption applied to his neighbors. Similar evidence was presented by other appellees. The general nature of their testimony and that of many of their neighbors was that the residential picketing created disturbance, noise and an aura of harassment and fear.

Without exception, each of the appellees and their neighbors testified that they were fully aware of the complaints of the appellants long before the residential "picketing" was undertaken. (We are well aware that this observation does not serve as justification for the prohibition of the subject residential picketing if, in fact and law, such expression is protected. Schneider v. State, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 [1939]).

Challenged Ordinance 347 was enacted following the aforesaid dispute and other matters of discontent. Section 1 declares, inter alia, that the "good order of the community require[s] that members of the community enjoy in their homes and dwellings a feeling of well-being, tranquility, and privacy" and "that the practice of picketing before or about residences obstructs and interferes with the free use of public sidewalks and public ways of travel" and " . . . has as its object the harassing of such occupants" and " . . . constitutes a nuisance . . . " Section 2 prohibits any picketing before or about the residence or dwelling of any individual. Section 3 invokes a fine or imprisonment or both upon conviction for violation.

The trial court combined, by and with the consent of the parties, the record of the evidentiary hearing held on the motion for preliminary injunction on May 18, 1973, with the evidentiary hearing held on November 30, 1973, relating to the entire controversy as one on the merits in relation to the declaratory and injunctive relief requested.

The trial court filed a Memorandum Opinion concurrent with entry of the judgment on December 28, 1973. The Court found that the plaintiffs' grievances and desires are "well known by the people they are seeking to inform" via resort to the residential picketing violative of Ordinance 347. The Court further found that such picketing was "distressing" to the defendants; that the right plaintiffs seek to assert, although not pure speech, is a protected First Amendment right, but that such conduct is subject to reasonable regulation; that Ordinance 347 constitutes the City's proper exercise of its police power in that the ordinance prohibits picketing in an inappropriate location and is not vague and overly broad under the guidelines of Gregory v. City of Chicago, 394 U.S. 111, 89 S.Ct. 946, 22 L.Ed.2d 134 (1969); that the right of privacy in one's home sought to be protected by the ordinance is worthy of protection; and that the prohibition of picketing mandated by the ordinance does not deprive the plaintiffs of their constitutional right to picket but deprives them simply of the ability to do so in certain locations.

Appellants claim trial court error in that: (1) the ordinance violated the First Amendment because the record in this case reveals that the ordinance and the governmental interests it presumes to further are not unrelated to the suppression of free expression; (2) the ordinance's absolute ban on residential picketing violates the First and Fourteenth Amendments because it does not "further an important or substantial govern-

mental interest" either as (a) a proper means to eliminate harassment and abate a nuisance, (b) a justification to eliminate obstruction of an interference with the free use of public sidewalks and public ways of travel, (c) a justification on grounds that other means of expressing freedom of speech exist, or (d) a justified means of protection of feelings of well-being, tranquility and privacy; and (3) the ordinance is overbroad in violation of the Fourteenth Amendment in that alternatives less restrictive of free expression are available to regulate rather than absolutely ban residential picketing.

## I.

Trial court findings—including those involving constitutional rights—may not be set aside on appeal unless they are clearly erroneous. Rule 52, Fed.R.Civ.P.; Williams v. Eaton, 468 F.2d 1079 (10th Cir. 1972); Arnold v. United States, 432 F.2d 871 (10th Cir. 1970).

The appellate court must view the evidence in the light most favorable to the prevailing party and must affirm unless the trial court findings and conclusions are clearly erroneous. Maloney-Crawford Tank Corporation v. Sauder Tank Company, 465 F.2d 1356 (10th Cir. 1972); Scaramucci v. Dresser Industries, Inc., 427 F.2d 1309 (10th Cir. 1970).

## II.

■ . The right of free speech is not absolute at all times and under all circumstances. Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). And it is well established that protected speech may be subject to reasonable limitation when important countervailing interests are involved. United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

First Amendment challenges to statutes and regulations on the basis that they are overbroad and vague have not fared well in recent Supreme Court decisions. In Parker, Warden v. Levy, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (June 19, 1974), the Court rejected the "void for vagueness" challenge under the due process clause of the Fifth Amendment and the "overbroad" challenge under the First Amendment, by upholding a general court-martial conviction under Art. 133 which prescribes punishment of an officer for "conduct unbecoming an officer and a gentleman" and Art. 134 which punishes "all disorders and neglects to the prejudice of good order and discipline in the armed forces." See also Secretary of Navy v. Avrech, 418 U.S. 676, 94 S.Ct. 3039, 41 L.Ed.2d 1033 (1974), involving conviction on charges of publishing a statement "with design to promote disloyalty and disaffection among the troops", and Arnett, Director, Office of Economic Opportunity, et al. v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (April 16, 1974), upholding removal or suspension of pay of a civil servant under the federal civil service code "for 'such cause as will promote the efficiency of the service'."

## III.

■ First Amendment guarantees of free expression cover a multitude of factual relationships. See Healy v. James, 408 U.S. 169, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972). These rights must be judged on a balancing basis. Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). There are two primary considerations involved in the "balancing" test determinative as to whether protestors have the right to conduct picketing on or in direct relation to private property. The first consideration is the relationship between the picketing and the area—in this case residential structures occupied by the appellees and their families. The second is whether there exists a reasonably effective alternative means of communications to reach the intended audience. See Lloyd Corp., Ltd. v. Tanner, 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972). The rationale in *Lloyd* is that the initial inquiry should be whether the conduct assertedly protected by the First Amendment is "directly related in its purpose" to the use to which the subject property is being put. We consider it most relevant to

observe here that the appellees testified that none of the business of the City of Artesia is conducted at their places of residence.

## IV.

■ Picketing used to communicate ideas is within the protective ambits of the First Amendment. It is nevertheless subject to reasonable regulation and control under the police power processes relating to time, manner and place for the purpose of maintaining public order. Jones v. Opelika, 316 U.S. 584, 62 S.Ct. 1231, 86 L.Ed. 1691 (1942), vacated on reh. on other grounds, 319 U.S. 103, 63 S.Ct. 890, 87 L.Ed. 1290 (1943); Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931); Stromberg v. California, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed.2d 1117 (1931). The preferred position of free speech and expression does not require legislators to be insensitive to claims by citizens of their entitlement to comfort and convenience. Kovacs v. Cooper, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949).

■ The possession and enjoyment of all constitutional guarantees are subject to the police power involving reasonable conditions deemed by the governing authorities essential to insure the safety, health, peace, good order and tranquility of the community. Chicago & Alton Railroad Company v. Tranbarger, 238 U.S. 67, 35 S.Ct. 678, 59 L.Ed. 204 (1915). The scope of the police power is to be measured by the legislative will of the people upon questions of public concern. West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937). Thus, in Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969), the Supreme Court said that First Amendment guarantees must be "applied in light of the special characteristics of the . . . environment." In this regard we take special note of the language employed by Mr. Justice Douglas, writing for the majority in Village of Belle Terre et al. v. Borass et al., 416 U.S. 1, 9, 94 S.Ct. 1536, 1541, 39 L.Ed.2d 797, 804 (1974):

The police power . . . is ample to lay out zones where family values, youth values, and the blessings of *quiet seclusion, and clean air make the area a sanctuary for people.* (Italics supplied).

We are not here involved in any question relating to ordinances which sweepingly prohibit any person in or upon any public place to picket. Such ordinances have been condemned on their face as unconstitutional invasions of free speech. Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940); Carlson v. California, 310 U.S. 106, 60 S.Ct. 736, 84 L.Ed. 1104 (1940). Rather, we are here dealing with an ordinance prohibiting picketing before or about residences. In the recent case of Rowan v. United States Post Office Department, 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970), Mr. Chief Justice Burger stated that the concept that "a man's home is his castle" into which not even the king may enter, has lost none of its vitality.

■ The regulation and abatement of nuisances is one of the basic functions of the police power. Municipalities are generally considered as having been given the right to suppress them. 56 Am. Jur.2d, Municipal Corporations, §§ 443–446, pp. 492–498, and cases cited therein. This includes the regulation or prohibition of certain noises which may affect health, well-being and tranquility. 56 Am.Jur.2d, Municipal Corporations, § 470, pp. 519–520, and cases cited therein.

■ A municipality may enact ordinances declaring certain acts to constitute nuisances even though the acts violate only private rights and produce damages to but one or a few persons. 58 Am.Jur.2d, Nuisances, § 9, p. 564, et seq., and cases cited therein. Of course, any such restrictions or limitations must be carefully scrutinized and cannot be lightly treated. Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940).

The balancing of competing rights generally has resulted in a determination that the privacy of the individual householder, even that of a public official, is entitled to protection. Gregory v. City

of Chicago, *supra*; Allen-Bradley Local, etc. v. Wisconsin Employment Relations Boards, 315 U.S. 740, 62 S.Ct. 820, 86 L.Ed. 1154 (1942); Hall v. Hawaiian Pineapple Co., 72 F.Supp. 533 (D.C.Hawaii, 1947); City of Wauwatosa v. King, 49 Wis.2d 398, 182 N.W.2d 530 (1971); State v. Anonymous, 6 Conn.Cir. 372, 274 A.2d 897 (1971); Keefe v. Organization for a Better Austin, 115 Ill.App.2d 236, 253 N.E.2d 76 (1969), rev'd. on other grounds, 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971); Pipe Machinery Co. v. De More, 76 N.E.2d 725 (Ohio App.1947); Evening Times Printing & Publishing Co. v. American Newspaper Guild, 124 N.J.Eq. 71, 199 A. 598 (1938); State v. Perry, 196 Minn. 481, 265 N.W. 302 (1936). *See also* 93 A.L.R.2d 1284, Anno. Nonlabor Picketing or Boycott.

In the case at bar, just as in City of Wauwatosa v. King, *supra*, the subject ordinance forbidding residential picketing does, from the facts contained in the whole of this record, constitute a valid exercise of governmental power intended to insure that members of the Artesia community enjoy in their homes a feeling of well-being, tranquility and privacy.

We affirm.

SETH, Circuit Judge (concurring):

This action began as a challenge to Ordinance 343 of the City of Artesia which was a ban on residential picketing except in a labor dispute. The trial court enjoined the enforcement of Ordinance 343 by reason of the exception referred to, and in reliance on Police Department of Chicago v. Mosley, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212. However, before the injunction went into effect, the City enacted Ordinance 347, which contained no exceptions. The plaintiffs amended their complaint to attack the new ordinance. The "picketing" which took place occurred under the prior ordinance (343), and there has been no picketing under No. 347.

Under these circumstances, the appeal is not concerned with any construction or application of particular wording of the ordinance or of definitions. The plaintiffs thus assert that on its face, in its absolute prohibition of residential picketing and in whatever degree of orderliness, it encroaches on First Amendment rights to an unreasonable extent.

Ordinance 347 is as broad a prohibition of residential picketing as could be devised, but the breadth is not to be measured against picketing or residential picketing, but against protected First Amendment rights. In this perspective it does prohibit certain speech-related conduct at a particular place. The nature and extent of the prohibited acts are set against the interests, rights, or privileges sought to be protected by the ordinance. Cox v. Louisiana, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487. It would serve no purpose to again describe the importance of the speech aspects of the balancing. In the situation before us, the pleadings frame the issues between the plaintiffs on one side and certain part-time elected public officials on the other. The basic problem relates to the hiring of city employees and it is a public-political problem. In this context it is apparent that several avenues are open for the exercise of the speech-public information rights both geographically and by reason of defendants' representative capacities as public servants. The homeside, fireside, privacy aspects have been described in Gregory v. Chicago, 394 U.S. 111, 89 S.Ct. 946, 22 L.Ed.2d 134, and Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510.

It is apparent that whatever restrictions on First Amendment rights which may come about under this ordinance— the requirement that whatever unique communication advantages that may be derived from residential picketing must be foregone—do not outweigh the need for protection of privacy in the home and home neighborhood. This protection is available for public officials as a place where there is only an identity as a private individual, and where their families and neighbors may do the same. *See* Lloyd Corp. v. Tanner, 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131, and Cox v.

Louisiana, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487.

I agree with the analysis of the balancing made by Judge Barrett and by the trial judge in this respect. I would thus affirm the judgment of the trial court.