**Dr. Dow PURSLEY, Dr. Doty Murphy, Rev. Mark Brooks and Rev. Paul Sagan, Plaintiffs,**

v.

**CITY OF FAYETTEVILLE, ARKANSAS; Paul Noland, Individually and as Mayor; Ron Bumpass, Jeremy Hess, Marilyn Johnson, Ernest Lancaster, William Martin and Marion Orton, All Individually and in their Official Capacities as Members of the Board of Directors of the City of Fayetteville, Arkansas, Defendants.**

**Civ. No. 85–5174.**

United States District Court, W.D. Arkansas, Fayetteville Division.

Feb. 11, 1986.

David E. Morris, Hall, Wright & Morris, Fayetteville, Ark., for plaintiffs.

James N. McCord, City Atty., Fayetteville, Ark., for defendants.

MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

On October 16, 1985, plaintiffs filed this action seeking a declaration that Fayetteville, Arkansas, City Ordinance No. 3125 is unconstitutional, and for an injunction forbidding its enforcement. The ordinance states in relevant part:

It shall be unlawful for any person or persons to engage in demonstrations of any type or to picket before or about the residence or dwelling place of any individual.

Any person convicted of violating this section shall be punished by a fine of not more than $500 or by imprisonment of not more than six (6) months, or by both such fine and imprisonment.

The Fayetteville City Council passed this ordinance on September 17, 1985. For some time, opponents of legalized abortion had been picketing the residence of William F. Harrison, M.D., a physician who performs elective abortions as part of his medical practice. Individuals have also picketed the Fayetteville Women's Clinic on North College Avenue, the main commercial artery of the city, where Dr. Harrison maintains his office. The Fayetteville ordinance does not purport to regulate conduct in front of commercial locations such as Dr. Harrison's office.

Neighbors of Dr. Harrison initiated complaints about demonstrations in the neighborhood and directed them to the City Prosecutor. He consulted state law, Ark.Stat. Ann. § 41–2967 (Repl.1977), and declined to bring a prosecution under it. The statute in question prohibited picketing in front of residences, but created exceptions for labor disputes. The prosecutor felt that the statute was unconstitutional under *Carey v. Brown*, 447 U.S. 455, 100 S.Ct. 2286, 65 L.Ed.2d 283 (1980), which held that a similar Illinois statute created an invalid content-based abridgement of First Amendment rights. The prosecutor thereafter drafted a proposed ordinance for the city,

deleting the labor dispute exception found offensive in *Carey,* and submitted it to the City Council, acknowledging that its submission was prompted by the activities in front of the Harrison home, but closing with the suggestion that any Fayetteville citizen thrust into the public light might enjoy its protections.

The city answered the plaintiffs' complaint and filed a separate motion for summary judgment. After determining from the parties, pursuant to local Rule No. 28, that no material facts are disputed, and that the issue sought to be resolved by declaratory judgment did indeed involve only questions of law, the court determined that the case was eligible for summary judgment.

Plaintiffs advance a number of objections against Ordinance No. 3125. They protest that it is unconstitutionally vague, that it abridges their rights to freedom of religion, and that it violates rights granted to them by the assembly and speech clauses of the First Amendment. In addition, they argue that the ordinance is invalid under state law, because it imposes penalties different from and in addition to those originally proposed under the state statute deemed unconstitutional under *Carey v. Brown, supra.*

■ The court has little difficulty determining that the ordinance survives a challenge for vagueness. In no case cited to the court, where state laws prohibited demonstrations or picketing at residences, *Carey v. Brown, id.,* or on public grounds, *United States v. Grace,* 461 U.S. 171, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983), has it ever been suggested that words such as "picketing" are incapable of being understood by persons of average intelligence. Nor does the ordinance, in the opinion of the court, abridge plaintiffs' free exercise of religion. That laws may prohibit behavior without impermissibly affecting belief is a principle too long settled in the law to require extensive citation. *United States v. Pence,* 410 F.2d 557 (8th Cir.1969).

■ Plaintiffs advance a closer case when they suggest that the city violates the First Amendment by banning residential picketing entirely. Indeed, their position receives support from a recent decision invalidating a similar ordinance on constitutional grounds. *Schultz v. Frisby,* 619 F.Supp. 792 (E.D.Wis.1985). The City of Fayetteville rests its position on *dicta* in *Carey v. Brown,* 447 U.S. at 470–71, 100 S.Ct. at 2295–96, which suggests that residential picketing may properly be subject to reasonable time, place and manner restrictions. The court did not squarely address the issue whether it might be permissible totally to ban picketing, etc., in residential areas. Instead, it held that once such a policy is in place, the state could not create an exception so as to allow picketing a residence involved in a labor dispute. The holding of *Carey v. Brown, supra,* denounced content discrimination in laws regulating speech and assembly. It did not purport to settle the question raised by this case: whether demonstrations in front of a person's home might be prohibited entirely.

The central question presented by this ordinance is whether the street or sidewalk in front of a residence is the kind of "public place" triggering First Amendment protections for those who would use such locales to advance their views. The court believes that this question cannot be answered mechanically, but must be addressed functionally. As *United States v. Grace, supra,* makes clear: "Publicly owned or operated property does not become a 'public forum' simply because members of the public are permitted to come and go at will." *Id.* 461 U.S. at 177, 103 S.Ct. at 1707. *Adderly v. Florida,* 385 U.S. 39, 47, 87 S.Ct. 242, 247, 17 L.Ed.2d 149 (1966), also recognized that "[t]he State, no less than the private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." The foregoing statements invite a functional analysis of this problem, and *Perry Education Ass'n v. Perry Local Educators Ass'n,* 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983), draws the guidelines along which the case must be decided where it declares

that "In places which by *long tradition* ... have been devoted to assembly and debate, the rights of the State to limit expressive activity are sharply circumscribed. At one end of the spectrum are streets and parks ... In these quintessential *public forums,* the government may not prohibit all communicative activity ... The State may enforce regulations of the time, place and manner of expression which are content neutral, narrowly tailored ... [l]eaving open ample alternative channels of communication." *Id.* at 45, 103 S.Ct. at 955 (emphasis added).

The court does not believe that streets and sidewalks in residential sections of a modern city are traditional *loci* for assembly and debate, *i.e.,* "quintessential public forums." Residential developers create additions to cities by platting properties conformably with governmental planning and zoning rules. Certain parts are dedicated to the public, not for the purpose of assembly and debate, but for means of ingress and egress. Zoning rules, street plans, and subdivision regulations, as well as additional restrictive covenants and bills of assurances arrived at privately, contemplate a diminished level of activity in residential areas. To this end, streets there are narrower, setbacks are required to prevent overbuilding on lots, and even very limited kinds of commercial activity are prohibited.

When one speaks of a forum, even in the attenuated modern sense of that word, the court takes this to refer to that part of a city into which the public collects for commercial activity, a part which has traditionally become a place for assembly and debate. In simpler times, these areas were fairly certain and definable: town squares, courthouse grounds and commons, as well the market stalls and shops nearby. Such cases as *Lloyd Corp. v. Tanner,* 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972), speak in passing of "the business area of a municipality" as being "so historically associated with the exercise of the First Amendment that access to them for purposes of exercising such rights cannot be denied absolutely." *Id.* at 559, 92 S.Ct. at 2224.

Today, the focus of public activity in a city is more diffuse. It is easier by far to determine areas which by design and usage are *not* devoted to public assembly and debate, a quintessential example of which would be the area in front of an individual's home. The rules by which new neighborhoods are developed, and older ones maintained, show that cities are sensitive to the need to create areas of refuge where one might enjoy "a very basic right to be free from sights, sounds, and tangible matter [one] does not want." *Rowan v. United States Post Office Dept.,* 397 U.S. 728, 736, 90 S.Ct. 1484, 1490, 25 L.Ed.2d 736 (1970) (semble).

The mechanical reading of *Perry* which this court declines to adopt, *i.e.,* one which deems all streets and sidewalks to be public forum grounds for purposes of the First Amendment, leads to anomalous results: a city might forbid demonstrations on the *grounds* of public buildings, even though the *sidewalks* upon which protesters would be permitted to congregate were so far from the locus of activity they wished to protest as to dilute substantially the expressive message they wish to convey. On the other hand, picketing a residence removed only 30 feet from a sidewalk would be allowed, despite the fact that the residence is wholly unconnected with any activity the protestants might denounce.

Common sense tells us that a residential area ought not to be considered a public forum. Societal values of privacy are vouchsafed to the home and curtilage. The preservation of this interest is deemed to be a compelling one for the state. In this connection, whatever burdens Ordinance No. 3125 places on these plaintiffs are lightened by the fact that they have, and use, alternative channels of communication, *viz.,* picketing the office of Dr. Harrison, located on what undoubtedly is the busiest street in Fayetteville. If the picketers' objective is to get their message to the public, they could do no better than to picket on the main Fayetteville thoroughfare over which literally thousands of travelers pass

each day. If, on the other hand, their objective is to disturb and harass Dr. Harrison and his neighbors by picketing in what is normally a quiet, residential neighborhood not frequented by the general public, their objective is not constitutionally protected.

■ Finally the plaintiffs contend that the Fayetteville ordinance is invalid as a matter of state law, because it allows the city to imprison individuals for violation of an ordinance, and because the maximum fine allowable under the penalty provision of the ordinance exceeds that which is allowed by a similar state statute prohibiting residential picketing. The court hesitates to issue declarations concerning the proper interpretation of state laws, feeling that these matters are best left to the state courts, particularly in close cases like this one. For two reasons, however, the court has determined to exercise its discretion in this area.

First, the plaintiffs have petitioned the court to give them some guidance, and a refusal of the court to address the question whether it is legal for the city to punish parties who trespass its ordinance would "place the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of foregoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding." *Steffel v. Thompson,* 415 U.S. 452, 462, 94 S.Ct. 1209, 1217, 39 L.Ed.2d 505 (1974). The court is not convinced that in this case the choice is quite as Homeric as the Supreme Court would indicate, but it does appreciate the dilemma of the parties, and realizes that if some declaration concerning the propriety of the penalties is not made, the parties would be hardly better off than they were before applying to this court.

Second, if the penalties are invalid, then the ordinance itself is invalid, and the court may at some time in the future be faced with grave due process questions if anyone were in fact arrested and imprisoned under it. In order to avoid as many controversies as reasonably possible, the court will attempt to settle all objections to the ordinance which the defendants have raised, even though they entail extended discussion of purely state law matters. In so passing on these questions, the court acts to avoid a proliferation of litigation, which is an object the declaratory judgment procedure seeks to obtain. *Cf. Twin City Fed. Savings and Loan Ass'n v. Gelhar,* 525 F.Supp. 802 (D.Minn.1981).

■ The plaintiffs contend that the ordinance is invalid because it prescribes a penalty of imprisonment, and because the fine authorized is one greater than that called for by the violation of a similar state statute. The recent case of *Wright v. Burton,* 279 Ark. 1, 648 S.W.2d 794 (1983), held ordinances of Conway, Arkansas, to be invalid because they did *not* impose jail sentences, whereas state laws regulating the same kind of conduct did. The difference between the *Wright* case, and the one at bar, is that at this moment there is no state law prohibiting residential picketing validly in place if, as both parties maintain, the state statute was invalidated by *Carey v. Brown, supra.* The holding of *Wright v. Burton, ibid.,* was in relation to a state statute designed to end the frustration of state law enforcement caused by a patchwork of city ordinances whose penalties were substantially less than those demanded by the General Assembly for identical acts. By its terms, *Wright v. Burton, id.,* does not allow and certainly does not demand that cities impose jail sentences for conduct which does not violate state policies.

In cases where the General Assembly has not enacted rules of criminal conduct, the laws of Arkansas hold that municipalities can enact their own ordinances pursuant to the police power entrusted to them. Ark.Stats.Ann. §§ 19–2408 and 2409 state that cities shall be allowed to punish violations of these ordinances by "fines, forfeitures and penalties." These laws derived from the Acts of the 1875 General Assembly, and appear to limit a city's power in this respect. However, in 1971 the state

passed a Home Rule Act which freed Arkansas cities from the rigors of the so-called Dillon Rule which severely circumscribed municipal power. *See, Tompos v. City of Fayetteville*, 280 Ark. 435, 438, 658 S.W.2d 404, 406 (1983). Under standard Home Rule analysis, the city might arguably receive the power to impose jail sentences for violations of ordinances. *See* McQuillen, *Municipal Corporations* § 17.-07 (3d ed., rev. vol.). Four years after passage of the Home Rule Act, however, the General Assembly amended Ark.Stat. Ann. § 19–2409 to place higher limits ($500) on the penalties which cities might impose for violations of their ordinances, in those cases where state laws had not already validly defined breaches of the criminal laws. The amended statute now reads, "Municipal corporations *shall not have power* to inflict *any fine or penalty* by ordinance or otherwise to a greater sum than five hundred dollars ($500) for any one (1) specified offense or violation of such law or ordinance...." (emphasis added). The ordinance, by its explicit terms, inflicts against violators a fine "of not more than $500 or by imprisonment of not more than six (6) months, *or both*...." (emphasis added).

 The court does not believe that the General Assembly intended for cities to impose penalties of imprisonment for violation of city ordinances, unless those ordinances regulate conduct proscribed under a valid state statute, in which case the General Assembly has ordered that cities are not permitted to provide lesser penalties than those demanded by the statutes. Ark.Stat. Ann. § 19–2411.

■ The fines authorized by Ordinance No. 3125 are within those allowed by state law, and are not violative of the constitution. To the extent, however, that they would exceed any allowances under state law, they might be reduced under the authority of Ark.Stat.Ann. § 19–2409. Inasmuch as the penalties are severable, the ordinance, though invalid in part, is valid

for purposes of defining the offense and authorizing a fine for its violation.

For the reasons stated, therefore, defendants' motion for summary judgment will be granted in part and denied in part, with a separate order to be filed contemporaneously herewith showing that Fayetteville Ordinance No. 3125 is valid to the extent that it constitutionally prohibits residential picketing, and levies fines for violations, but unlawful to the extent that it seeks to impose penalties of imprisonment therefor.