820 F.2d 951
 56 USLW 2002
 Dr. Dow PURSLEY, Dr. Doty Murphy, Rev. Mark Brooks and Rev.
Paul Sagan, Appellants,
v.
CITY OF FAYETTEVILLE, ARKANSAS; Paul Noland, Individually
and as Mayor; Ron Bumpass, Jeremy Hess, Marilyn Johnson,
Ernest Lancaster, William Martin and Marion Orton, All
Individually and in Their Official Capacities as Members of
the Board of Directors of the City of Fayetteville,
Arkansas, Appellees.
 No. 86-1332.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 12, 1986.
Decided June 10, 1987.
Rehearing and Rehearing En Banc Denied Aug. 28, 1987.
 
 Walter Weber, Milwaukee, Wis., for appellants.
 James N. McCord, Fayetteville, Ark., for appellees.
 Before JOHN R. GIBSON, Circuit Judge, HENLEY, Senior Circuit Judge, and MAGILL, Circuit Judge.
 MAGILL, Circuit Judge.
 
 
 1
 In this case we examine a Fayetteville, Arkansas city ordinance that bans all pickets and demonstrations in front of residences or dwelling places. We conclude that the ordinance is unconstitutionally overbroad, in violation of the First Amendment.
 
 
 2
 I. BACKGROUND.
 
 
 3
 William F. Harrison is a Fayetteville doctor who performs abortions as part of his practice. Appellants, residents of Fayetteville and the neighboring town of Springdale who oppose abortion, began picketing on the public sidewalk[1] fronting his house in 1985.[2] Dr. Harrison's neighbors complained about the demonstrations to the city prosecutor, who drafted and submitted to the City Council a statute prohibiting such demonstrations.[3] The prosecutor acknowledged that the proposed statute, Fayetteville City Ordinance No. 3125, was prompted by the picketing of Dr. Harrison's home.[4] The City Council passed Ordinance No. 3125 on September 17, 1985.II. PROCEEDINGS BELOW.
 
 
 4
 On October 16, 1985, appellants filed this action for declaratory and injunctive relief, asserting that the ordinance is unconstitutionally vague, an abridgement of their right to freedom of religion, and a violation of the First Amendment assembly and speech clauses. They also challenged the ordinance on state law grounds. The parties stipulated that appellants wanted to continue picketing Dr. Harrison's house, but have refrained because of the potential penalties under the new ordinance.
 
 
 5
 The City of Fayetteville answered appellants' complaint and filed a separate motion for summary judgment. The district court, in Pursley v. City of Fayetteville, Ark., 628 F.Supp. 676 (W.D.Ark.1986), found that because only questions of law were involved, summary proceeding was appropriate.
 
 
 6
 The court first held that the ordinance was not void for vagueness, because persons of average intelligence could clearly understand words such as "picketing." The court also found that the ordinance did not abridge appellants' free exercise of religion, in that laws may prohibit behavior without impermissibly affecting belief. Id. at 678.
 
 
 7
 The court framed the central question in the case as: "whether the street or sidewalk in front of a residence is the kind of 'public place' triggering First Amendment protections for those who would use such locales to advance their views." Id. Rejecting what it characterized as a mechanical interpretation of Perry Education Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983), which spoke of "streets and parks" as "quintessential public forums," the court concluded that residential streets and sidewalks are not quintessential public forums, i.e., "that part of a city into which the public collects for commercial activity, a part which has traditionally become a place for assembly and debate." Pursley, 628 F.Supp. at 679.
 
 
 8
 The court stated that alternative channels of communication, such as the avenue running past Dr. Harrison's office, were available to appellants, and that the avenue, a main thoroughfare, was a far better place to promulgate their message than Dr. Harrison's neighborhood, where their efforts could be seen as harassment rather than speech. Id. at 679-80.
 
 
 9
 The district court concluded that the ordinance was valid to the extent it prohibited residential picketing and levied fines, but unlawful to the extent it imposed imprisonment.
 
 
 10
 III. DISCUSSION.
 
 
 11
 The picketers argue on appeal: (1) that the ordinance abridges their First Amendment right of free speech, (2) that the ordinance is not sufficiently narrowly tailored to its purposes, and (3) that the ordinance is unconstitutionally vague and overbroad in violation of the First and Fourteenth Amendments. Amici curiae submitted a brief for appellants, arguing that the ordinance is unconstitutional, both (1) as applied to peaceful picketing on public streets and sidewalks, and (2) as an overbroad prohibition of free expression.
 
 
 12
 Because the parties stipulated to the facts below, there are no factual issues on appeal. This court reviews de novo the district court's application of the law to the facts. Matter of Newcomb, 744 F.2d 621, 625 (8th Cir.1984).
 
 
 13
 We apply a three-part test to appellants' free speech claim. First, we must determine whether the picketers' activity is speech protected by the First Amendment. If so, we "must identify the nature of the forum, because the extent to which the Government may limit access depends on whether the forum is public or nonpublic." Cornelius v. NAACP Legal Defense and Education Fund, Inc., 473 U.S. 788, 105 S.Ct. 3439, 3446-47, 87 L.Ed.2d 567 (1985). Finally, we must decide whether the justifications for excluding expressive activity satisfy the relevant constitutional standard.
 
 
 14
 Proceeding to the first step, we note that picketing is not pure speech, because it involves conduct and need not include spoken words. Nevertheless, "[t]here is no doubt that as a general matter peaceful picketing and leafletting are expressive activities involving 'speech' protected by the First Amendment." United States v. Grace, 461 U.S. 171, 176, 103 S.Ct. 1702, 1706, 75 L.Ed.2d 736 (1983). More specifically, "[t]here can be no doubt that * * * peaceful picketing on the public streets and sidewalks in residential neighborhoods * * * [constitutes] expressive conduct that falls within the First Amendment's preserve." Carey v. Brown, 447 U.S. 455, 460, 100 S.Ct. 2286, 2290, 65 L.Ed.2d 263 (1980).
 
 
 15
 Next, we must determine whether the sidewalk in front of Dr. Harrison's home is a "public forum." If so, the state's ability to limit expressive activity is "sharply circumscribed." Perry, 460 U.S. at 45, 103 S.Ct. at 954. A number of Supreme Court cases have held streets and sidewalks to be traditional public forums.
 
 
 16
 Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. Such use of the streets and public places has, from ancient times, been a part of the privileges, immunities, rights, and liberties of citizens. The privilege of a citizen of the United States to use the streets and parks for communication of views on national questions may be regulated in the interest of all * * * but it must not, in the guise of regulation, be abridged or denied.
 
 
 17
 Hague v. CIO, 307 U.S. 496, 515-16, 59 S.Ct. 954, 964, 83 L.Ed. 1423 (1939).
 
 
 18
 "[S]treets, sidewalks, parks, and other similar public places are so historically associated with the exercise of First Amendment rights that access to them for the purpose of exercising such rights cannot constitutionally be denied broadly and absolutely." Hudgens v. NLRB, 424 U.S. 507, 515, 96 S.Ct. 1029, 1034, 47 L.Ed.2d 196 (1976) (quoting Amalgamated Food Employees Union v. Logan Valley Plaza, Inc., 391 U.S. 308, 315, 88 S.Ct. 1601, 1607, 20 L.Ed.2d 603 (1968)). " '[P]ublic places' historically associated with the free exercise of expressive activities, such as streets, sidewalks, and parks, are considered, without more, to be 'public forums.' " United States v. Grace, 461 U.S. 171, 177, 103 S.Ct. 1702, 1707, 75 L.Ed.2d 736 (1983).
 
 
 19
 The Seventh Circuit recently decided a case very similar to the one before us. Schultz v. Frisby, 807 F.2d 1339 (7th Cir.1986). Grappling with the "public forum" question, the court noted: "It is not intuitively obvious, however, that all streets, in all places, must automatically be considered public forums. * * * It seems incongruous to decide that this particular street is a public forum simply because streets in general have historically been centers of expressive activity." Schultz, 807 F.2d at 1346. Although it noted the district court's decision in this case that residential streets and sidewalks are not public forums, the Seventh Circuit stated: "Nevertheless, the Supreme Court has always placed all streets, regardless of their differing characteristics, into the same privileged category for first amendment purposes." Id. The court noted that to hold streets located in residential areas as not being public forums would remove "vast areas of this country" from the protection of the First Amendment. In examining the pertinent Supreme Court precedent, we agree.[5] We therefore conclude, following the weight of authority, that the picketing at issue here took place in a public forum.
 
 
 20
 We next examine whether Fayetteville's justifications for excluding the expressive activity, and the means the City has employed to carry out its goal, can pass constitutional muster. This involves a four-part test. A time, place and manner restriction on expressive activity in a public forum may be sustained only if the restriction (1) is content-neutral, (2) serves a significant governmental interest, (3) is narrowly tailored to serve that interest, and (4) leaves open ample alternative channels of communication. See United States v. Grace, 461 U.S. 171, 177, 103 S.Ct. 1702, 1707, 75 L.Ed.2d 736 (1983).
 
 
 21
 A. Content-Neutrality.
 
 
 22
 First, the challenged ordinance must be content-neutral. The Fayetteville prosecutor redrafted the prior law, eliminating the labor dispute exception, to make the present ordinance content-neutral. The ordinance makes no distinctions based on the message that the picketers convey, and thus clearly passes this step in the analysis.
 
 
 23
 B. Significant Governmental Interest.
 
 
 24
 Although the Supreme Court has held streets and sidewalks to be public forums, the Court has also recognized the importance of peace and privacy in the home.
 
 
 25
 [W]e have often declared that "[a] state or municipality may protect individual privacy by enacting reasonable time, place, and manner regulations applicable to all speech irrespective of content." (citations omitted). In sum, "no mandate in our Constitution leaves States and governmental units powerless to pass laws to protect the public from the kind of boisterous and threatening conduct that disturbs the tranquility of spots selected by the people * * * for homes, wherein they can escape the hurly-burly of the outside business and political world * * *." (citation omitted).
 
 
 26
 Preserving the sanctity of the home, the one retreat to which men and women can repair to escape from the tribulations of their daily pursuits, is surely an important value. Our decisions reflect no lack of solicitude for the right of an individual "to be let alone" in the privacy of the home, "sometimes the last citadel of the tired, the weary, and the sick." (citations omitted). The State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society."
 
 
 27
 Carey v. Brown, 447 U.S. 455, 470-71, 100 S.Ct. 2286, 2295, 65 L.Ed.2d 263 (1980).
 
 
 28
 Fayetteville's purpose in enacting the ordinance is easily found. The ordinance states, in short, that its purpose is to protect the domestic tranquility of its residents, and that residential picketing disturbs that sense of peace.[6]
 
 
 29
 We are satisfied that Fayetteville has shown a "significant governmental interest" in enacting the ordinance.
 
 
 30
 C. Narrowly Tailored.
 
 
 31
 Next, the ordinance must be narrowly tailored to serve Fayetteville's legitimate interest. We conclude that the ordinance fails this test. "Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." NAACP v. Button, 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963) (citation omitted). We have accepted Fayetteville's legitimate interest in protecting its citizens' peace at home. The way the ordinance carries out this goal, however, is to completely ban picketing anywhere a home is located, be it a house surrounded by other houses, a townhouse surrounded by shops, or an apartment sharing space in a building with offices. A "residence or dwelling place" is often located close to the hubbub of daily commerce. A person living in such a home cannot expect the same level of external tranquility as can a person living in a purely residential neighborhood. Thus, to prohibit picketing in such a busy commercial area is, in effect, to discriminate against speech. Applied to such an area, the ordinance would, under the guise of promoting domestic tranquility, prohibit any potentially annoying conduct involving expressive conduct, while at the same time allowing conduct completely unrelated to the First Amendment, yet equally annoying, to continue unabated. Such a result fails to effect Fayetteville's goals and stands the First Amendment on its head.
 
 
 32
 Although a duly enacted provision carries a presumption of constitutionality, "when a regulation allegedly infringes on the exercise of first amendment rights, the statute's proponent bears the burden of establishing the statute's constitutionality." ACORN v. City of Frontenac, 714 F.2d 813, 817 (8th Cir.1983), citing Organization for a Better Austin v. Keefe, 402 U.S. 415, 419, 91 S.Ct. 1575, 1577, 29 L.Ed.2d 1 (1971). Hence, the clear rule in this circuit is that in response to a First Amendment challenge, "the proponent of the regulation must demonstrate that the government's objectives will not be served sufficiently by means less restrictive of first amendment freedoms." ACORN, 714 F.2d at 818 (footnote omitted).[7]
 
 
 33
 Fayetteville argues that its interest in preserving residential tranquility and privacy cannot be fully protected by a less restrictive ordinance, citing Garcia v. Gray, 507 F.2d 539 (10th Cir.1974) and City of Wauwatosa v. King, 49 Wis.2d 398, 182 N.W.2d 530 (1971).
 
 
 34
 In Garcia, the Tenth Circuit upheld an ordinance making it unlawful "for any person to engage in picketing before or about the residence or dwelling of any individual." The Garcia court, however, in upholding the ordinance as a valid exercise of the city's police power, did not mention whether less restrictive alternatives were available. We find nothing in Garcia to support Fayetteville's argument as to less restrictive alternatives.
 
 
 35
 In Wauwatosa the Wisconsin Supreme Court upheld a municipal ordinance almost identical to the one found unconstitutional in Carey v. Brown. Wauwatosa is therefore of dubious precedential value. In any event, the Wauwatosa court stated:
 
 
 36
 Narrowness is a means, not an end. It is a means of testing whether or not the regulation or prohibition is strictly limited to what is required to implement the legitimate state interest being served. * * * If, as we have said, it is a proper public purpose to protect both privacy and tranquility, then the prohibiting of picketing before or about the home is a clearly related and entirely reasonable means to such end."
 
 
 37
 Wauwatosa, 182 N.W.2d at 536-37.
 
 
 38
 We doubt whether an ordinance's being "clearly related" to an end is sufficient to make it "strictly limited" to that end. In this case, although the ordinance is clearly related to preserving peace and quiet, it is not strictly limited toward that end. If the ordinance in this case were applied to a dwelling located in a mixed commercial and residential area, the ban would have a negligible effect on the serenity of the neighborhood while impinging significantly on the First Amendment. Legitimate picketing of an office or store could be quashed because of the presence of an adjacent apartment. We disagree with the Wauwatosa court's conclusion that the ordinance was in that case (or is in this case) "strictly limited" to effect its goal. We remain convinced that less restrictive alternatives are available.
 
 
 39
 The ordinance as applied to the facts in this case presents a closer question. The picketing is taking place before a structure used solely as a residence, which is located in a purely residential area, and no activity takes place within the structure that is the subject of the protest. In such a situation, Fayetteville's goal of protecting a citizen's domestic tranquility, and the citizen's reasonable expectation of privacy, dovetail without implicating the fatal overbreadth present in other scenarios to which the ordinance may be applied.
 
 
 40
 We do not, however, examine or decide whether the ordinance is constitutional as applied to this case.
 
 
 41
 Although a statute may be neither vague, overbroad, nor otherwise invalid as applied to the conduct charged against a particular defendant, he is permitted to raise its vagueness or unconstitutional overbreadth as applied to others. And if the law is found deficient in one of these respects, it may not be applied to him either, until and unless a satisfactory limiting construction is placed on the statute.
 
 
 42
 Coates v. City of Cincinnati, 402 U.S. 611, 619-20, 91 S.Ct. 1686, 1690-91, 29 L.Ed.2d 214 (1971) (White, J., dissenting), citing Dombrowski v. Pfister, 380 U.S. 479, 491-92, 85 S.Ct. 1116, 1123-24, 14 L.Ed.2d 22 (1965).
 
 
 43
 We also note in this regard that the ordinance has not been used against the picketers. Ordinarily "constitutional adjudication requires a review of the application of a statute to the conduct of the party before the Court." City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 798, 104 S.Ct. 2118, 2125, 80 L.Ed.2d 772 (1984). The picketers' overbreadth challenge to the ordinance, however, is a "facial challenge." If a statute is constitutionally invalid on its face, it may be judicially examined regardless of its particular application to specific facts. See Schultz v. Frisby, 807 F.2d 1339, 1348-49 (7th Cir.1986).
 
 
 44
 IV. CONCLUSION.
 
 
 45
 Thus, because of its potential applicability to areas where a citizen's privacy expectation is minimal and the right to express one's view is maximal, the ordinance is void for overbreadth. We note in conclusion that our holding is not a blanket prohibition of residential picketing statutes. As the Supreme Court stated in Carey, 447 U.S. at 470, 100 S.Ct. at 2295, "[w]e are not to be understood to imply, however, that residential picketing is beyond the reach of uniform and nondiscriminatory regulation." We hold, rather, that in this instance Fayetteville has not carried out its laudable motives with the care and precision required by the Constitution.
 
 
 46
 For the foregoing reasons, the judgment of the district court is reversed insofar as it holds the ordinance valid.[8]
 
 
 47
 JOHN R. GIBSON, Circuit Judge, dissenting.
 
 
 48
 The court today holds that although Fayetteville has a significant governmental interest in protecting the domestic tranquility of its residents, the means by which Fayetteville has chosen to protect that interest--the residential picketing ordinance--is constitutionally invalid on its face. I agree that the ordinance addresses a valid, significant governmental interest. I must, however, respectfully dissent from the majority's conclusion that the ordinance is constitutionally infirm because it is not narrowly tailored to serve that governmental interest.
 
 
 49
 Application of the doctrine of facial invalidity or "overbreadth" is "manifestly, strong medicine." Broadrick v. Oklahoma, 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973). The Supreme Court has stated that, particularly where conduct and not merely speech is involved, "the over-breadth of a statute must not only be real, but substantial as well." Id. at 615, 93 S.Ct. at 2917; see also City Council v. Taxpayers for Vincent, 466 U.S. 789, 799-801, 104 S.Ct. 2118, 2125-26, 80 L.Ed.2d 772 (1984) (same); New York v. Ferber, 458 U.S. 747, 770-71, 102 S.Ct. 3348, 3361-62, 73 L.Ed.2d 1113 (1982) (same). "[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an over-breadth challenge." Vincent, 466 U.S. at 800, 104 S.Ct. at 2126; accord Finzer v. Berry, 798 F.2d 1450, 1472-74 (D.C.Cir.1986), cert. granted, --- U.S. ----, 107 S.Ct. 1282, 94 L.Ed.2d 141 (1987); American Booksellers Ass'n v. Virginia, 802 F.2d 691, 695 (4th Cir.1986); Clean-Up '84 v. Heinrich, 759 F.2d 1511, 1513-14 (11th Cir.1985). Moreover, the Court instructs us that ordinances and statutes "should not be deemed facially invalid unless [they are] not readily subject to a narrowing construction by the state courts." Erznoznik v. City of Jacksonville, 422 U.S. 205, 216, 95 S.Ct. 2268, 2276, 45 L.Ed.2d 125 (1975); see also Secretary of State v. Joseph H. Munson Co., 467 U.S. 947, 965 n. 13, 104 S.Ct. 2839, 2851 n. 13, 81 L.Ed.2d 786 (1984) (voiding statute limiting fundraising expenditures by charities for facial invalidity where state courts had been unable to construe statute so as to avoid constitutional infirmity); Ferber, 458 U.S. at 766-74, 102 S.Ct. at 3359-63 (child pornography statute not substantially overbroad as construed by state courts).
 
 
 50
 The court today, defying these principles, concludes that the ordinance is overbroad based upon the single hypothetical example of picketing adjacent to "a dwelling located in a mixed commercial and residential neighborhood." Ante at 957. The court merely conceives of a single impermissible application of the ordinance, contrary to the teaching of Vincent, 466 U.S. at 800, 104 S.Ct. at 2126, and ignores the possibility and likelihood of a narrowing construction by the state courts, contrary to Erznoznik, 422 U.S. at 216, 95 S.Ct. at 2276. I believe that in the vast majority of this ordinance's applications it would not implicate the court's concern about impinging significantly on free speech while having only a "negligible effect on the serenity of the neighborhood." Ante at 957. Furthermore, the state and local courts could easily construe the ordinance so as to exclude from its reach the majority's postulated apartment building next to an office.
 
 
 51
 The ordinance's reference to a residence or dwelling place is plain in meaning to me. The court's hypothetical "townhouse surrounded by shops," id. at 956, or apartment sharing space in a building with offices "located close to the hubbub of daily commerce," id., adds a dimension to the ordinance's enforcement that could readily be avoided by a narrowing construction. The mixed residential and commercial area suggested by the court does not enjoy the peace and tranquility associated with a purely residential neighborhood. The application of the ordinance to a quiet residential neighborhood, however, is a very different matter. The court seemingly suggests that as applied to picketing in traditional residential neighborhoods the ordinance does not violate the First Amendment. Id. at 957. The court finds overbreadth only by extending the ordinance's reach to "other scenarios," i.e., the private dwelling located in a busy commercial area.
 
 
 52
 The stipulation on which this case was submitted recites the office and residence addresses of Dr. Harrison and states "Dr. Harrison's residence is used solely for residential purposes." A construction applying the ordinance only to dwellings or residences such as Dr. Harrison's, located in a purely residential neighborhood, and not to those in a commercial area is not only possible, but far more reasonable than that the court presupposes in order to invalidate the ordinance. I would accept the stipulation at face value, apply the ordinance to the residence it describes and decline the extended construction given by the court today, and conclude that the ordinance is valid.
 
 
 53
 This dissent need not be prolonged with a detailed discussion of the basis for sustaining this ordinance. Judge Coffey's scholarly and eloquent dissent in Schultz v. Frisby, 807 F.2d 1339 (7th Cir.1986), traces in detail the Supreme Court's recognition of the right to privacy in the home. Judge Coffey expresses my concern with the result the majority today reaches when he observes:
 
 
 54
 As important as free speech is to preserving our freedom, the right of privacy which ensures the opportunity for peace, tranquility, comfort, and personal solace away from the often overwhelming bombardment of unsolitated communications from political, commercial, and religious groups, enterprises, and organizations cannot be any less important in a society whose existence depends on the ability of each individual (as well as the majority) to conscientiously exercise his or her judgment in the conduct of their own affairs and those of their locality and nation. The conscientious exercise of judgment upon which we depend can hardly be exercised in the absence of the privacy necessary for contemplation and reflection.
 
 
 55
 Id. at 1339 (Coffey, J., dissenting).
 
 
 56
 In striking down Fayetteville's residential picketing ordinance, this court today delivers a thunderclap shattering the privacy and quiet of the home. I dissent.
 
 
 
 [1]
 No trespass issue is raised here. There is no claim that the picketers are infringing upon Dr. Harrison's lawn or other private property
 
 
 [2]
 Dr. Harrison does not perform abortions or any other medical procedures at his home, which is in a residential neighborhood. Picketers also picketed Dr. Harrison's office at the Fayetteville Women's Clinic, which is on a main commercial avenue. The office picketing is not in dispute
 
 
 [3]
 The statute, Ordinance No. 3125, states in pertinent part:
 Section 1. That the Fayetteville Code of Ordinances is hereby amended by adding Sec. 13-15 to read as follows:
 Sec. 13-15. Picketing of Private Residences Prohibited.
 It shall be unlawful for any person or persons to engage in demonstrations of any type or to picket before or about the residence or dwelling place of any individual.
 Any person convicted of violating this section shall be punished by a fine of not more than $500 or by imprisonment of not more than six (6) months, or by both such fine and imprisonment.
 
 
 [4]
 The prosecutor declined to bring a prosecution under the pertinent state law, Ark.Stat.Ann. Sec. 41-2967 (1977), which prohibits picketing in front of a residence, with an exception for labor disputes. Section 41-2967 states:
 It shall be unlawful for any person or persons to engage in demonstrations of any type or picketing before or about the residence or dwelling place of any individual. Nothing herein shall be deemed to prohibit (a) the picketing in any lawful manner, during a labor dispute, of the place of employment involved in such labor disputes; or (b) the holding of a meeting or assembly on any premises used for the discussion of subjects of general public interest.
 The prosecutor thought section 41-2967 was unconstitutional under Carey v. Brown, 447 U.S. 455, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980), which held a similar Illinois statute unconstitutional for creating an invalid content-based distinction between labor and non-labor picketing. Ordinance No. 3125 is similar to section 41-2967 but has no labor dispute exception.
 
 
 [5]
 Although we cannot fault the district court for its cogent analysis of the changing character of cities and towns, or for its well-founded concern for a resident's peace and quiet, we think the guidelines in this area too clear to allow such a drastic shift in "public forum" doctrine
 
 
 [6]
 Section 2 of the ordinance states:
 The Board of Directors hereby determines that protection and preservation of the home is the keystone of democratic government; that the public health, safety and welfare requires that members of the community enjoy in their homes a feeling of well-being, tranquility, and privacy, and when absent from their homes carry with them the sense of security inherent in the assurance that they may return to the enjoyment of their homes; that the practice of picketing or demonstrating before or about residences and dwelling places causes emotional disturbance and distress to the occupants; that such practice has as its object the harassing of such occupants and without resort to such practice full opportunity exists, and under the terms and provisions of this ordinance will continue to exist, for the exercise of freedom of speech and other constitutional rights; and the immediate passage of this ordinance is necessary to avoid the detrimental results herein set forth. Therefore, an emergency is hereby declared to exist and this ordinance being necessary for the public health, safety and welfare shall be in full force and effect from and after its passage and approval.
 
 
 [7]
 The Third Circuit has adopted a less stringent test in this regard, requiring the regulation's proponent to show merely that ample alternative avenues of communication remain open, but not requiring the proponent to show that there are no less restrictive alternatives. Pennsylvania Alliance for Jobs and Energy v. Council of Munhall, 743 F.2d 182, 186 (3d Cir.1984). The Second and Seventh Circuits follow our view, however, as set forth in ACORN. See New York City Unemployed & Welfare Council v. Brezenoff, 677 F.2d 232, 237 (2d Cir.1982); City of Watseka v. Illinois Public Action Council, 796 F.2d 1547, 1551-52 (7th Cir.1986), aff'd, --- U.S. ----, 107 S.Ct. 919, 93 L.Ed.2d 972 (1987)
 
 
 [8]
 In view of our disposition on overbreadth grounds, we need not reach whether the ordinance leaves open ample alternative channels of communication