Daniel MATTHEWS and Philip
Lindsay, Plaintiffs, Appellees,

v.

TOWN OF NEEDHAM, et al.,
Defendants, Appellants.

No. 84–2051.

United States Court of Appeals,
First Circuit.

Argued April 2, 1985.

Decided June 17, 1985.

Douglas A. Randall, Quincy, for defend-
ants, appellants.

Carolyn Grace, Boston, with whom Cath-
erine McEniry, Cambridge, Shapiro &
Grace and Marjorie Heins, Massachusetts
Civil Liberties Union, Boston, were on brief
for plaintiffs, appellees.

Before BREYER, Circuit Judge, RO-
SENN,* Senior Circuit Judge, and TORRU-
ELLA, Circuit Judge.

ROSENN, Circuit Judge.

The plaintiffs in this case challenge the
constitutionality of a town bylaw that pro-
hibits the posting of most outdoor signs,

---

* Of the Third Circuit, sitting by designation.

including political signs. The United States District Court for the District of Massachusetts held that the bylaw violates the first amendment guarantee of freedom of speech and is unconstitutional on its face because it gives commercial speech more protection than noncommercial speech. Under the circumstances present here, we agree and affirm.

## I.

The Town of Needham enacted a sign bylaw to prohibit virtually all off-premise outdoor signs. Excepted, however, are those outdoor signs "pertaining exclusively to the premises on which they are located or to the products, accommodations, services or activities on the premises." Needham Sign Bylaw § 4.3. Section 5 of the bylaw lists signs that are permitted in Needham. Included in this section are signs denoting the name and/or profession of the owner or occupant of the building, temporary signs erected for a charitable cause, temporary signs relating to the sale, rental or lease of the premises or stating the name and address of the parties involved in construction on the premises, and one bulletin board for and on the premises of a public, charitable, or religious institution. *Id.* § 5.1. *See* appendix A attached hereto. Signs not expressly allowed are prohibited.[1]

Plaintiffs, Daniel Matthews and Philip Lindsay, seek to post temporary 28″ × 22″ political signs on their houses and lawns. Political signs are not listed among the exceptions noted in the bylaw and are therefore prohibited. Consequently, the plaintiffs filed suit seeking declaratory and injunctive relief against the defendants, primarily on the ground that the sign bylaw violates their first amendment right to freedom of speech. In particular, the plaintiffs sought an injunction restraining the defendants from enforcing the bylaw with regard to the posting of political signs. The plaintiffs also sought a declaration that the bylaw is unconstitutional on its face, and as applied to them.

The parties agree that there are no material facts at issue. Plaintiffs moved for summary judgment and, after holding a hearing, the district court granted the plaintiffs' motion, holding that the bylaw violates the plaintiffs' first amendment right to freedom of speech and is unconstitutional on its face. *See Matthews v. Town of Needham,* 596 F.Supp. 932, 935 (D.Mass. 1984). The court subsequently issued an order declaring the bylaw unconstitutional and enjoining the defendants from enforcing the bylaw with respect to the posting of political signs. The defendants, after an unsuccessful attempt to have the order amended to their satisfaction, appealed.

## II.

The Supreme Court has held that "above all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its *content.*" *Police Department of Chicago v. Mosley,* 408 U.S. 92, 95, 92 S.Ct. 2286, 2289, 33 L.Ed.2d 212 (1972) (emphasis added). A restriction, however, on the "time, place, and manner" of speech is permissible if it advances a significant governmental interest, is justified without reference to the content of the speech, and leaves open "ample alternative channels for communication of the information." *See Virginia State Board of Pharmacy v. Virginia Consumer Council, Inc.,* 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976); *Metromedia v. City of San Diego,* 453 U.S. 490, 516, 101 S.Ct. 2882, 2897, 69 L.Ed.2d 800 (1981). The defendants contend that the restriction contained in the bylaw at issue in the instant case is of this latter

---

1. Sections 3.2 and 5.1 of the Needham Sign Bylaw are the sections of the bylaw most pertinent to this litigation. Section 3.2 states in pertinent part:

    *Permits.* No sign shall be erected ... without a sign permit issued by the Building Inspector following authorization by the Sign Committee, unless specifically exempted from this requirement in Section 5. Permits shall only be authorized for signs in conformance with this Bylaw....

type. A review of the facts and the law negates this contention.

■ No political signs are allowed in any district in the Town of Needham; yet such signs as "For Sale" signs, professional office signs, contractors' advertisements, and signs erected for charitable or religious causes are allowed in all districts. Furthermore, in business and manufacturing zones, large commercial advertising signs are permitted which pertain to products, accommodations, services, or activities on the premises on which they are located, but no political signs are permitted. *See* Needham Sign Bylaw §§ 4.3, 5.3, 6(g) & (h). Thus, it appears that the bylaw is concerned with the content, as opposed to the time, place, or manner, of the speech. As noted by the Supreme Court in *Metromedia:*

> [W]e reject appellees' suggestion that the ordinance may be appropriately characterized as a reasonable "time, place, and manner" restriction. The ordinance does not generally ban billboard advertising as an unacceptable "manner" of communicating information or ideas; rather, it permits various kinds of signs. Signs that are banned are banned everywhere and at all times.

453 U.S. at 515–16, 101 S.Ct. at 2896–97. The instant bylaw, then, cannot legitimately be seen as a "time, place, and manner" restriction. Rather, it is more properly viewed as discriminating on the basis of content.

The defendants respond by asserting that the bylaw does not discriminate on the basis of "content," but rather on the basis of "function." This argument is unpersuasive. The "function" of any sign is to communicate the information written on it. The defendants' preference for the "functions" of certain signs over those of other (e.g., political) signs is really nothing more than a preference based on *content*. *Cf. Linmark Associates, Inc. v. Township of Willingboro*, 431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977) (striking down an ordinance prohibiting the posting of "For Sale" and "Sold" signs on the ground that it

violated the first amendment by impermissibly regulating signs on the basis of content).

■ Of course, the government is not utterly without power to regulate content. Despite the strong wording in *Mosley, see supra*, there can be no argument that the right to free expression "is subject to some qualifications." *Mosley*, 408 U.S. at 103, 92 S.Ct. at 2294 (Burger, C.J., concurring); *see also* L. Tribe, *American Constitutional Law* § 12–2, at 581–82 (1978). For example, speech may potentially be suppressed if it poses a "clear and present danger," *see Schenck v. United States*, 249 U.S. 47, 52, 39 S.Ct. 247, 249, 63 L.Ed. 470 (1919), constitutes a defamatory falsehood, *see Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347, 94 S.Ct. 2997, 3010, 41 L.Ed.2d 789 (1974), or rises to the level of "fighting words," *see Chaplinsky v. New Hampshire*, 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942). Furthermore, a restriction on otherwise protected commercial speech is valid if it seeks to implement a substantial government interest, directly advances that interest, and reaches no further than necessary to accomplish the given objective. *See Metromedia*, 453 U.S. at 507, 101 S.Ct. at 2892; *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557, 563–66, 100 S.Ct. 2343, 2350, 65 L.Ed.2d 341 (1980). Still, if the government seeks to regulate speech on the basis of content, it must, of course, meet a much more exacting standard than would be the case if only time, place, or manner were implicated. Essentially, it is necessary for the government to prove that the regulated speech "falls on the unprotected side of one of the lines the Court has drawn to distinguish those expressive acts privileged by the first amendment from those open to government regulation with only minimal due process scrutiny." L. Tribe, *supra*, § 12–2, at 582.

In the instant case, the defendants have failed to establish that the bylaw's regulation of content is permissible. Here, we are concerned with political speech—a form of speech generally accorded great protec-

tion. *See Members of the City Council of Los Angeles v. Taxpayers for Vincent,* —— U.S. ——, 104 S.Ct. 2118, 2135, 80 L.Ed.2d 772 (1984) (stating that "political speech is entitled to the fullest possible measure of constitutional protection"). Despite the preeminent status given to political speech and the lack of any reason (e.g., clear and present danger) to suppress it here, the bylaw in question suppresses this form of speech as well as almost all other noncommercial speech. This is particularly surprising inasmuch as the bylaw permits several forms of commercial speech—speech consistently given less protection than noncommercial speech. *See generally Metromedia,* 453 U.S. at 513, 101 S.Ct. at 2895 ("[O]ur recent commercial speech cases have consistently accorded noncommercial speech a greater degree of protection than commercial speech."). By giving more protection to commercial than to noncommercial speech, the bylaw inverts a well-established constitutional principle. The Supreme Court has examined this very situation and declared that such a law is unconstitutional on its face. *See Metromedia,* 453 U.S. at 512–13, 521, 101 S.Ct. at 2894–95, 2899. The bylaw here, then, cannot stand.

The defendants, in arguing that the bylaw is constitutional, rely heavily on the Supreme Court's recent decision in *Members of the City Council of Los Angeles v. Taxpayers for Vincent,* —— U.S. ——, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). This reliance is misplaced. In *Vincent,* the Court upheld a municipal ordinance prohibiting the posting of *any* signs on *public* property. The Court concluded that the ordinance was a valid "time, place, and manner" restriction.

*Vincent* is distinguishable from this case in two important respects. First, *Vincent* involved a law that prohibited the posting of all signs, regardless of content. The Needham bylaw, on the other hand, is not content-neutral for it permits certain types of speech but prohibits others. We discussed the implications of this content-based discrimination earlier. Second, the ordinance in *Vincent* was limited to the restraint of signs on public property, whereas the bylaw in the instant case touches on private property. The *Vincent* Court suggested that the special nature of private property may justify a greater degree of first amendment protection when it concluded that the failure to extend the ordinance to private as well as public property did not invalidate the law. The Court stated: "[T]he validity of the esthetic interest in the elimination of signs on public property is not compromised by failing to extend the ban to private property. The private citizen's interest in controlling the use of his own property justifies the disparate treatment." *Id.* 104 S.Ct. at 2132. The *Vincent* case, then, is clearly distinguishable from the case under consideration. Thus, *Vincent* does not alter our conclusion that the bylaw here is unconstitutional.

Accordingly, the judgment of the district court is affirmed.

## APPENDIX A

Section 5.1 states in pertinent part:

*All Districts.* The following signs are allowed in all zoning districts:

a) One sign, either attached or freestanding, indicating only the name and/or profession of the owner or occupant, and the street number, not to exceed two square feet in area. Requires no sign permit unless indicating a profession.

b) An off-premises directional sign....

c) Temporary signs of not more than twelve sq. ft. area, erected for a charitable or religious cause.

d)(i) A temporary unlighted real estate sign not larger than eight square feet in area, advertising the sale, rental, or lease of the premises or subdivision on which it is erected requires a permit and payment of a uniform fee to be determined by the Sign Committee whenever the sign is to be displayed on the premises of the property being offered as stated above by the owner. Real Estate brokers or agents shall obtain a one-year permit for displaying such signs and shall be subject to

APPENDIX A—Continued

a uniform fee to be assessed annually in an amount to be determined by the Sign Committee.

(ii) A temporary unlighted sign not larger than twenty-five square feet indicating the name and the address of the parties involved in construction on the premises. Requires no sign permit.

(iii) For a development of six or more lots or dwelling units, a real estate sign not larger than twenty-five square feet at each visible street entrance to the development from a prior existing way. e) One bulletin board for and on the premises of a public, charitable, or religious institution....