James E. WHEELER, Nora L. Wheeler,
and Sharon Carmichael,
Plaintiffs-Appellees,

v.

COMMISSIONER OF HIGHWAYS,
COMMONWEALTH OF
KENTUCKY, Defendant-Appellant.

No. 86–5423.

United States Court of Appeals,
Sixth Circuit.

Argued March 27, 1987.

Decided June 22, 1987.

Rehearing Denied Aug. 4, 1987.

William H. Wallace (argued), Louisville, Ky., for defendant-appellant.

Theodore H. Amshoff, Jr. (argued), Louisville, Ky., Richard L. Masters, for plaintiffs-appellees.

James E. Wheeler, pro se.

Lewis G. Benham, Louisville, Ky., for J. Wheeler.

Bert. T. Combs, Sheryl G. Snyder, William H. Hollander, Wyatt, Tarrant and Combs, Louisville, Ky., for amicus curiae, Outdoor Advertising Assc., of Kentucky, Inc.

John F. Daly (argued), John F. Cordes, U.S. Dept. of Justice, Appellate Staff, Civil Div., Washington, D.C., for amicus curiae, the U.S.

Before KENNEDY, RYAN and NORRIS, Circuit Judges.

CORNELIA G. KENNEDY, Circuit Judge.

Appellees challenged the constitutionality, on first and fourteenth amendment grounds, of the Kentucky Billboard Act, Ky.Rev.Stat.Ann. §§ 177.830–177.890 (Baldwin 1985) ("Billboard Act"), and the Kentucky regulations implementing this statute. 603 Ky.Admin.Regs. 3:010 (1975). The District Court held that the Billboard Act and regulations were unconstitutional on their face because they discriminated against non-commercial speech in favor of commercial speech. The Kentucky Commissioner of Highways ("Commissioner") appeals arguing that the statute and regulations are content neutral and narrowly tailored to serve substantial state interests. We agree and reverse.

The Billboard Act prohibits the erection or maintenance of any "advertising device" on private property within 660 feet of the right of way of any interstate highway or federal-aid primary highway. Ky.Rev.Stat. Ann. § 177.841(1).[1] Violations of the Billboard Act are declared to be a public nuisance authorizing an employee or officer of the Kentucky Bureau of Highways to remove the device without notice. *Id.* § 177.-870. The express purpose of the Billboard Act is to provide for maximum visibility along affected highways, to prevent unreasonable distraction of operators of motor vehicles, to prevent interference with the effectiveness of traffic lights, signs or signals, to preserve and enhance the natural and scenic beauty or aesthetic features of the affected highways, and to promote the safety and comfort of the users of such highways. *Id.* § 177.850. Section 177.860 contains an exception to the general prohibition. It provides that devices erected or maintained on the property for the purpose of indicating the name and address of the owner, lessee, or occupant of the property, the name or type of business or profession conducted on such property, information

---

1. The Billboard Act also prohibits the erection of any advertising device located outside of an urban area and beyond 660 feet of the right of way that is "legible and/or identifiable" from any interstate or federal-aid primary highway. Ky.Rev.Stat.Ann. § 177.841(2). Directional and official signs, signs advertising the sale or lease of property on which they are located, and signs advertising activities conducted on the property upon which they are located are exempt from this prohibition.

required or authorized by law to be displayed on the property, devices advertising the sale or lease of the property on which it is placed, devices complying with applicable commercial or industrial zoning ordinances, and devices providing directional information for businesses offering goods and services of interest to the traveling public, do not violate section 177.841.[2]

In addition to containing the general prohibitions found in the Billboard Act, the regulations promulgated by the Kentucky Department of Transportation spell out the permissible limits for on-premises signs in protected areas. On-premises signs are permitted and include signs defined in section 177.860 and signs "that contain a message relating to an activity or the sale of a product on the property on which they are located." 603 Ky.Admin.Regs. 3:010, § 2(3) (1975). The regulations also regulate the size and spacing of on-premises signs.[3] "Billboards," defined as "devices that contain a message relating to an activity or product that is foreign to the site on which the device and message is located," id. § 2(2), are prohibited in all protected areas,[4] except for areas zoned commercial or industrial prior to September 21, 1959. There, "billboards" or off-premises signs are allowed subject to size and spacing restrictions. Id. § 5.

The Billboard Act and regulations were adopted in response to the federal Highway Beautification Act of 1965. 23 U.S.C. §§ 131–136 (1982) ("Act"). This Act provides for the regulation and control of outdoor advertising devices adjacent to interstate and federal-aid primary highways. Its purpose is "to protect the public investment in such highways, to promote the safety and recreational value of public travel, and to preserve natural beauty." Id. § 131(a). The Act requires each state participating in the highway beautification program to exercise "effective control" over outdoor advertising. It prohibits advertising devices located within 660 feet of the interstate or federal-aid primary highway, or if located outside urban areas, such devices are prohibited beyond 660 feet if visible from the highway. "Effective control" means that signs, displays, or devices within the prescribed area shall be limited to directional and official signs, signs advertising the sale or lease of property on which they are located, signs advertising activities conducted on the property on which they are located, signs of historic or artistic significance, and signs advertising the distribution by nonprofit organizations of free coffee to individuals traveling on the interstate or primary system. Id. § 131(c). The penalty for not complying with the Act is the forfeiture of ten percent of the state's federal highway funds until such time as the state provides for effective control. Id. § 131(b).

The Commissioner refused to grant appellees a permit to display a political or religious message on a billboard located one foot from the right of way fence in Bullitt County, Kentucky, adjacent to Interstate Highway 65. The area was not zoned industrial or commercial prior to September 21, 1959, and the proposed sign would not qualify as an on-premise sign. It does not appear that any activity was conducted on the portion of the property where the sign was to be placed. Consequently, appellees sought an injunction against the enforcement of the Billboard Act based on allegations of its discriminatory and ad hoc enforcement. In an amended complaint, appellees added federal officials as defendants and challenged the constitutionality of the Billboard Act and regulations, and the federal regulations implementing the Act. Appellees also sought damages arising from the violation of their constitutional

---

**2.** Section 177.860 also authorizes the Commissioner to prescribe by regulations reasonable standards for the advertising devices exempt from section 177.841.

**3.** The regulations specify that on-premise advertising devices may not advertise items incidental to the primary activity conducted on the proper-

ty. For example, a supermarket may not advertise on its on-premise sign the products it sells.

**4.** The regulations permit off-premise signs in urban areas if they are more than 660 feet from the highway. In non-urban areas, off-premises signs are prohibited if "legible and/or identifiable" from the highway.

rights. By stipulation, the case was assigned to a magistrate for trial. The magistrate dismissed the case as to the federal defendants and declined to award damages, concluding that such an award would violate the eleventh amendment. However, the magistrate entered summary judgment for appellees against the Commissioner. The Commissioner appealed. We concluded that the factual stipulations were unclear; the magistrate had failed to make an adequate recital of the uncontested facts on which he relied or make clear the legal basis for his decision. We remanded the action for clarification of the holding. After remand, the magistrate held the Billboard Act and regulations unconstitutional on their face because they prohibit signs with ideological messages in areas where "on-premises" commercial or other activities could be advertised.[5] This appeal followed.

The Commissioner contends that the Billboard Act and regulations are a valid time, place, and manner restriction on appellees' first amendment rights because they are not aimed at the messages that appellees seek to display but at the "secondary effects" of advertising devices including their detrimental effects on highway scenic beauty. The Commissioner argues that the Supreme Court's decision in *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981), does not apply because the restrictions are content neutral: they do not distinguish between commercial and noncommercial messages, as was the case with the ordinance in *Metromedia*, because the restrictions apply to all messages irrespective of content. Furthermore, the Commissioner argues that the restrictions are narrowly tailored to serve substantial state interests—aesthetics and highway safety—and that the restrictions leave ample alternative areas for communication through the use of billboards, i.e., areas zoned commercial or industrial along interstate and federal aid primary highways as well as areas adjacent to other streets and highways. Appellees, on the other hand, contend that the restrictions violate the first amendment because they define what is permissible based on the content of the message: signs advertising a business or activity located on the property are permitted while a sign of the same size advertising a business or activity off-site is prohibited. Although appellees recognize that the regulations permit noncommercial messages relating to an activity on-site, they contend that the inherent limitations on an activity preclude many ideological, political, and religious ideas. Thus, appellees argue that the Billboard Act and regulations are invalid under *Metromedia*. Furthermore, appellees contend that even if the restrictions are content neutral, no adequate alternative means of communication are reasonably available.

## I.

■ The Supreme Court has recognized that the first amendment does not guarantee the right to communicate one's views at all times and places or in any manner. *Heffron v. International Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981). Expression, whether oral or written, is subject to reasonable time, place, and manner restrictions. *Clark v. Community For Creative Non-Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984). Such restrictions are valid provided that they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a substantial governmental interest, and they leave open ample alternative channels for communication of the information. *Id. Accord Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 807, 104 S.Ct. 2118, 2130, 80 L.Ed.2d 772 (1984); *Heffron*, 452 U.S. at 647-48, 101 S.Ct. at 2563-64.

## II.

■ We believe that the statute and regulations in the present case are valid place

---

5. The magistrate recognized that signs advertising non-commercial activities would be allowed if those activities were being conducted on the property. However, the magistrate concluded that messages such "Abortion is Murder," "Save the Whales," and "No Nukes" would not be permitted.

and manner restrictions. The statute and regulations subject on-premises signs adjacent to interstate highways to size and spacing restrictions. The statute and regulations also prohibit all off-premises signs containing any message in protected areas adjacent to interstate highways. The regulations permit off-premises signs in urban areas if the sign is more than 660 feet from the interstate highway. Additionally, they permit off-premises signs in areas adjacent to the interstate or federal aid primary highways which were zoned commercial or industrial prior to September 21, 1959. These permissible off-premises signs are also subject to size and spacing restrictions. It is apparent from the express purpose and effect of the Billboard Act that the restrictions on the location of off-premises signs regulate the secondary effects, not the content of these signs.

The Supreme Court has recently considered the validity of a restriction designed to regulate the secondary effects of protected speech. In *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), the Court considered a challenge to a zoning ordinance that prohibited adult theaters from locating within 1000 feet of any residential zone, single- or multiple-family dwelling, church, park, or school. The Court noted that the ordinance treated theaters that specialize in adult films differently from other kinds of theaters. Nevertheless, the Court noted that the ordinance was not aimed at the content of the films shown, but rather at the secondary effects of such theaters on the nearby community. *Id.* 106 S.Ct. at 929. Accordingly, the Court found that the ordinance was consistent with its definition of "content-neutral" speech because it was justified without reference to the content of the speech, and stated:

> The ordinance does not contravene the fundamental principle that underlies our concern about "content-based" speech

regulations: that "government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views."

*Id.* at 929 (quoting *Police Dep't of Chicago v. Mosley,* 408 U.S. 92, 95–96, 92 S.Ct. 2286, 2289–90, 33 L.Ed.2d 212 (1972)).[6]

In *Heffron v. International Soc'y for Krishna Consciousness, Inc.,* 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981), the Court considered a rule promulgated by a public corporation that required all persons desiring to sell, exhibit, or distribute materials during the state fair to do so only from fixed locations. The Court concluded that the restriction was content neutral and a reasonable restriction on place and manner because it applied evenhandedly to all persons or organizations, whether commercial or charitable, who wish to distribute and sell written materials or to solicit funds. *Id.* at 655, 101 S.Ct. at 2567.

We believe that the Billboard Act and regulations are content neutral. They are not directed at the content of the messages, but at their secondary effects. The restrictions permit commercial and non-commercial signs in protected areas as long as the signs relate to an activity on the premises. Messages such as "Abortion is Murder," or "No Nukes" are permissible if an activity related to the message is conducted on the premises. Like the restrictions in *Heffron,* the Billboard Act and regulations apply evenhandedly to commercial and non-commercial speech; they discriminate against no viewpoint or subject matter. Furthermore, commercial and non-commercial messages are treated alike in urban areas and areas zoned commercial or industrial prior to September 21, 1959.

The Washington Supreme Court reached a similar conclusion with respect to a statute much like the statute and regulations in the present case. In *State v. Lotze,* 92 Wash.2d 52, 593 P.2d 811, *appeal dis-*

---

**6.** The *City of Renton* Court relied on *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), where the Court concluded that zoning ordinances designed to combat undesirable secondary effects of adult theaters are to be reviewed under the

standards relating to content neutral time, place, and manner regulations. The Court held that the City of Detroit could distinguish between adult theaters and other kinds of theaters because it was not regulating the dissemination of "offensive" speech. *Id.* at 71, 96 S.Ct. at 2453.

*missed,* 444 U.S. 921, 100 S.Ct. 257, 62 L.Ed.2d 177 (1979), the state sought an order for removal of billboards from defendant's property. The applicable statute prohibited signs visible from an interstate, primary, or scenic highway. Excepted from this general prohibition were directional or other official signs required or authorized by law, signs advertising the sale or lease of property on which they were located, and signs advertising activities conducted on the property on which they were located. Such signs were permissible within view of a scenic highway subject to size, location, and number restrictions. The statute also permitted signs adjacent to highways in commercial or industrial areas subject to size and spacing restrictions. The court, recognizing that a total ban of on-premises signs may violate the first amendment, concluded that the statutory scheme was content neutral and constituted a valid place and manner limitation on speech. 92 Wash.2d at 59, 593 P.2d at 815.

Furthermore, the on-premises/off-premises distinction does not constitute an impermissible regulation of content just because the determination of whether a sign is permitted at a given location is a function of the sign's message. Kentucky, by allowing persons who own or lease property, to have a sign, subject to size and space restrictions, advertising an activity conducted on the property is not favoring one message over another. The state has simply recognized that the right to advertise an activity conducted on-site is inherent in the ownership or lease of the property. In *Linmark Assocs., Inc. v. Township of*

*Willingboro,* 431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977), the Court considered an ordinance that prohibited the posting of "For Sale" signs or "Sold" signs because the township sought to abate the flight of white homeowners from a racially integrated community. The ordinance did not prohibit other types of signs. The Court found the ordinance unconstitutional because the township enacted the ordinance to prevent its residents from obtaining certain information. *Id.* at 96, 97 S.Ct. at 1620.[7] The Court emphasized that because the township did not prohibit all lawn signs, "the ... ordinance is not genuinely concerned with the place of the speech—front lawns." *Id.* at 93, 97 S.Ct. at 1618. Additionally, the Court noted that the "township has not prohibited all lawn signs—or all lawn signs of a particular size or shape—in order to promote aesthetic values." *Id.*

Unlike the ordinance in *Linmark,* the Billboard Act and regulations are concerned with the place of the signs and the promotion of aesthetic values. The Kentucky legislature enacted the statute in part "[t]o preserve and enhance the natural scenic beauty or the aesthetic features of ... interstate highways." Ky.Rev.Stat. Ann. § 177.850(4).[8] Kentucky has prohibited all off-premises signs in non-urban areas and areas not zoned industrial or commercial prior to September 21, 1959. The exception for on-premises signs recognizes the important function of these signs and was not enacted to prevent the citizens of Kentucky from receiving certain information.[9] *See State v. Hopf,* 323 N.W.2d

---

7. According to the Court, "The Council has sought to restrict the free flow of [the information relating to home sales] because it fears that otherwise homeowners will make decisions inimical to what the Council views as the homeowners' self-interest and the corporate interest of the township: they will choose to leave town." *Linmark,* 431 U.S. at 96, 97 S.Ct. at 1620.

8. The federal government, as *amicus* in the present case, correctly points out that the Supreme Court in *Heffron* upheld an off-site/on-site distinction. As discussed above, the Court upheld a state fair rule restricting in-person sales, solicitations of funds, and the distribution

of materials to booths. Any group wishing to engage in this type of speech had to acquire a "premises" at the fair. The Court did not find that this restriction amounted to a regulation of content because it discriminated against no viewpoint or subject matter, but regulated the location of various activities in an evenhanded way. *Heffron,* 452 U.S. at 648–49, 101 S.Ct. at 2564.

9. The Supreme Court in *Consolidated Edison Co. v. Public Serv. Comm'n,* 447 U.S. 530, 100 S.Ct. 2326, 65 L.Ed.2d 319 (1980), struck down a content-based distinction. There, the Court concluded that defendant could not prohibit public utilities from including in their monthly bills

746 (Minn.1982) (on-premise sign is part of business itself and state, by prohibiting off-premises signs within 100 feet of a church or school, did not favor one message over another).

Appellees in the present case rely on the Supreme Court's decision in *Metromedia Inc. v. City of San Diego,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981). There, the Court considered the constitutionality of a San Diego ordinance that banned all outdoor advertising devices, unless authorized by one of the specified exceptions. These exceptions included signs identifying the premises on which the sign was located or signs advertising goods produced or services rendered on the premises. The exceptions also included religious symbols, commemorative plaques of recognized historical societies, signs carrying news items or telling the time or temperature, signs erected in the discharge of any governmental function, or temporary political campaign signs. A majority of the Court recognized that the city had legitimate interests in controlling the non-communicative aspects of billboards, but found the ordinance unconstitutional on its face.

Writing for the plurality, Justice White found the ordinance constitutional insofar as it restricted commercial advertising to on-site advertising, but stated:

There is a broad exception for onsite commercial advertisements, but there is no similar exception for noncommercial

speech. The use of onsite billboards to carry commercial messages related to the commercial use of the premises is freely permitted, but the use of otherwise identical billboards to carry noncommercial messages is generally prohibited.... Insofar as the city tolerates billboards at all, it cannot choose to limit their content to commercial messages; the city may not conclude that the communication of commercial information concerning goods and services connected with a particular site is of greater value than the communication of noncommercial messages.

*Metromedia,* 453 U.S. at 513, 101 S.Ct. at 2895. With respect to the limited exceptions for certain non-commercial advertisements, the plurality stated that the ordinance favored certain categories of non-commercial speech over others. According to the plurality, "[w]ith respect to non-commercial speech, the city may not choose the appropriate subjects for public discourse." *Id.* at 515, 101 S.Ct. at 2896.[10] Thus, the plurality concluded that the city had regulated impermissibly the content of non-commercial speech. *Id.* at 515, 101 S.Ct. at 2896.[11]

Justice Brennan, with whom Justice Blackman joined, concurred in the judgment. Justice Brennan believed that the ordinance constituted a total ban of billboards, and the city had failed to justify

inserts discussing the benefits of nuclear power while permitting inserts discussing other issues. *Id.* at 537, 100 S.Ct. at 2333. According to the Court, "[t]he First Amendment's hostility to content-based regulation extends not only to restrictions on particular viewpoints, but also to prohibition of public discussion of an entire topic." *Id.* Unlike the restrictions in *Consolidated Edison,* the Billboard Act and regulations do not regulate the content of proposed messages because they do not seek to regulate the viewpoint or subject-matter of an advertisement, or prohibit public discussion of an entire topic.

**10.** The plurality noted: "To allow a government the choice of permissible subjects for public debate would be to allow that government control over the search for political truth." *Metromedia,* 453 U.S. at 515, 101 S.Ct. at 2896 (quoting *Consolidated Edison Co. v. Public Se,v. Comm'n,* 447 U.S. 530, 538, 100 S.Ct. 2326, 2333, 65 L.Ed.2d 319 (1980)).

**11.** The plurality in *Metromedia* did not consider the constitutionality of the Highway Beautification Act which, like the regulations implementing the Billboard Act, does not contain a total prohibition of non-commercial signs in areas adjacent to the interstate and federal-aid primary highways. The plurality noted:

As far as the Federal Government is concerned, such billboards are permitted adjacent to the highways in areas zoned industrial or commercial under state law or in unzoned commercial or industrial areas. 23 U.S.C. § 131(d). Regulation of billboards in those areas is left primarily to the States. For this reason, the decision today does not determine the constitutionality of the federal statute. *Metromedia,* 453 U.S. at 515 n. 20, 101 S.Ct. at 2896 n. 20.

this total restriction. The city failed to show, for example, that banning billboards actually furthered traffic safety and that billboards presented more substantial aesthetic problems than other permitted uses. *Id.* at 528–30, 101 S.Ct. at 2903–04. Although not deciding whether the exceptions to the total ban constituted an independent basis for invalidating the ordinance, Justice Brennan disagreed with the plurality's characterization of the exceptions in the ordinance for non-commercial speech. He concluded that the ordinance would permit non-commercial advertisements if the owner or occupant is an enterprise usually associated with non-commercial speech. *Id.* at 536, 101 S.Ct. at 2907.

Unlike the restriction at issue in *Metromedia,* the on-premises exception in the present case is not limited to commercial speech: the on-site exception can be applied to any topic, commercial or non-commercial. Additionally, unlike the ordinance in *Metromedia,* the exceptions in the Kentucky statute and regulations for non-commercial speech are not limited to political advertisements, commemorative plaques, or religious symbols. The restrictions permit any non-commercial signs as long as they relate to an activity on the premises. The magistrate failed to recognize that messages such as "Abortion is Murder" or "No Nukes" are permissible as long as an activity related to the message is conducted on the property.

Appellees in the present case also rely on several cases construing similar state statutes or local ordinances in support of their proposition that the Billboard Act and regulations are unconstitutional. In *John Donnelly & Sons v. Campbell,* 639 F.2d 6 (1st Cir.1980), *aff'd,* 453 U.S. 916, 101 S.Ct. 3151, 69 L.Ed.2d 999 (1981), plaintiffs challenged the constitutionality of the Maine Traveler Information Services Act. Me. Rev.Stat.Ann. tit. 23, §§ 1901–1925 (1980 & Supp.1986). The statute prohibited the erection or maintenance of signs, subject to certain exceptions. These exceptions included signs of a governmental body, signs

identifying stops or fare zones of motor buses, signs showing the place and time of church and civic organization meetings, signs announcing fairs and exhibitions within the county, signs announcing non-profit historical and cultural institutions, temporary political signs, and signs located on common carriers and inspected motor vehicles. Plaintiffs argued, *inter alia,* that some of the exceptions to the general prohibition depend on the message conveyed; consequently, the statute was directed toward the content of the messages on the signs. Nevertheless, the court concluded that the statute, generally, was content neutral and prohibited billboards not because of their messages, "but because the medium itself is objectionable." 639 F.2d at 8. The court found the statute unconstitutional, however, because of its effect on non-commercial speech.[12] The court noted that the statute permitted some types of on-premises signs relating to non-commercial activities but concluded that these exceptions did not go far enough. *Id.* at 15. The court construed the on-premise exception as not permitting messages such as "Abortion is Murder" or "Save the Whales," and found that the statute impacted more heavily on ideological than on commercial speech.

In *Matthews v. Town of Needham,* 764 F.2d 58 (1st Cir.1985), residents of Needham challenged the validity of a bylaw barring the posting of almost all off-premises signs. Certain types of signs were exempt from this general prohibition but the exception did not permit political signs, even though "For Sale" signs, professional office signs, and signs erected for religious or charitable causes were permitted. The court held the bylaw unconstitutional because it was concerned with the content, not the time, place, or manner of the speech. *Id.* at 60. Similarly, in *Metromedia, Inc. v. Mayor & City Council,* 538 F.Supp. 1183 (D.Md.1982), plaintiff challenged a city ordinance that contained restrictions on the kind and size of on-premis-

---

12. The court stated that the statute was valid with respect to its effect on commercial speech.

*John Donnelly & Sons,* 639 F.2d at 15.

es advertising signs permitted in a certain area of the city and prohibited in all off-premises signs in this area. The court, relying on the Supreme Court's decision in *Metromedia,* found the statute unconstitutional because the ordinance did not treat commercial and non-commercial speech equally. *Id.* at 1187. According to the court, the ordinance permitted an owner or occupier of land within the affected area to affix a sign identifying the premises, but prohibited signs displaying messages other than identification of the premises. *See also State v. Miller,* 83 N.J. 402, 416 A.2d 821 (1980) (ordinance invalid where it prohibited signs relating to political speech while allowing "For Sale" signs and signs identifying churches, schools, parks, and signs erected by federal, state or local government); *Norton Outdoor Advertising, Inc. v. Village of Arlington Heights,* 69 Ohio St.2d 539, 433 N.E.2d 198 (1982) (ordinance restricting billboard advertising to product sold or business conducted on premises held unconstitutional because it excluded all non-commercial messages).

In the present case, the Billboard Act and regulations permit on-premises signs relating to an activity conducted on the site on which the sign is located. Messages such as "Abortion is Murder," "Save the Whales," or "George Wallace For President" are permitted in non-urban areas and areas not zoned industrial or commercial before September 21, 1959 as long as an activity relating to the message is being conducted on the premises. Non-commercial and commercial speech are treated alike. The restrictions do not limit non-commercial signs to signs advertising churches and civic organizations or commercial activities as in *John Donnelly & Sons, Matthews,* and *Mayor & City Council.*

### III.

The next question this Court must consider is whether the Billboard Act and regulations are narrowly tailored to serve substantial governmental interests. As discussed above, the Billboard Act was enacted to provide for maximum visibility and safety along affected highways, and to preserve and enhance the scenic beauty or aesthetic features of such highways. Ky. Rev.Stat.Ann. § 177.850. The U.S. Supreme Court has in several instances concluded that such interests are substantial and justify a content neutral restriction on expression.

All of the Justices in *Metromedia* recognized the importance of the safety and aesthetic considerations that gave rise to the San Diego ordinance. Furthermore, seven Justices would have found those interests sufficient to justify a content neutral ban on off-premises commercial signs. 453 U.S. at 508–511, 101 S.Ct. at 2893–2894 (opinion of White, J., joined by Stewart, Marshall, Powell, JJ.); *id.* at 552, 101 S.Ct. at 2915 (Stevens, J., dissenting in part); *id.* at 559–61, 101 S.Ct. at 2919–20 (Burger, C.J., dissenting); *id.* at 570, 101 S.Ct. at 2924 (Rehnquist, J., dissenting).[13] A majority of the Court in *Taxpayers for Vincent,* 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984), reaffirmed this conclusion and found that these interests justified an ordinance that prohibited the attachment of *all* signs to utility poles. The Court concluded that the city's interests in advancing aesthetic values, minimizing traffic hazards, and preventing interference with the intended use of public property were substantial. According to the *Taxpayers for Vincent* Court: "The problem addressed by this ordinance—the visual assault on the citizens of Los Angeles presented by an accumulation of signs posted on public property—constitutes a significant substantive evil within the City's power to prohibit." *Id.* at 807, 104 S.Ct. at 2130.

More recently, in *City of Renton,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), the Court concluded that the city's interest in attempting to preserve the quality of urban life was sufficient to justify an ordi-

---

**13.** The plurality noted the meager record on the issue of whether the ordinance furthered the city's interests in traffic safety and aesthetics. Nevertheless, deferring to the judgments of local lawmakers, the plurality agreed with the California Supreme Court's conclusion that as a matter of law, the ordinance reasonably related to these interests.

nance that prohibited adult motion picture theaters from locating within 1000 feet of any residential zone, single- or multiple-family dwelling, church, park, or school. *Id.* 106 S.Ct. at 930. Rejecting the argument that the city must rely on studies specifically relating to the city's problems, the Court stated that "so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses," *id.* at 931, such interests are sufficient to support the restriction. *See also John Donnelly & Sons,* 639 F.2d 6 (1st Cir.1980) (court took judicial notice that statute prohibiting erection and maintenance of most off-premises signs advanced substantial state interest in aesthetics and tourism); *E.B. Elliott Advertising Co. v. Metropolitan Dade County,* 425 F.2d 1141 (5th Cir.) (court found ordinance prohibiting all off-premises signs within 200 feet of expressway and regulating their size and spacing within 660 feet of expressway supported by county's substantial interest in promoting highway safety and aesthetics), *cert. dismissed,* 400 U.S. 805, 91 S.Ct. 12, 27 L.Ed.2d 12 (1970)).

■ Although the record in the present case contains little evidence regarding Kentucky's interests in traffic safety, we conclude that the interest in promoting the recreational value of public travel and preserving natural beauty along interstate highways is substantial and sufficient to support the content neutral restrictions. *Accord John Donnelly & Sons, Inc. v. Outdoor Advertising Bd.,* 369 Mass. 206, 339 N.E.2d 709 (1979) (bylaw enacted solely for aesthetic reasons supported content neutral ban on most off-premises signs); *Cf. John Donnelly & Sons,* 639 F.2d at 12–13.

■ Kentucky's restrictions are also narrowly tailored to achieve this interest. The Supreme Court has held that a content neutral time, place, and manner restriction must be upheld unless it "is substantially broader than necessary to protect the [state's] interest." *Taxpayers for Vincent,* 466 U.S. at 808, 104 S.Ct. at 2130. There, the Court rejected the argument that the city's interest in aesthetics could not support a ban on signs on utility poles because the city did not ban signs wherever they might be located. The Court emphasized that a partial content neutral ban may nonetheless enhance the city's appearance.[14] *Id.* at 811, 104 S.Ct. at 2132.[15]

Appellees do not contend that the restrictions could be more narrowly tailored to serve Kentucky's interest in preserving the natural beauty of its interstate highways. Moreover, the exception for on-site messages and off-site messages in areas zoned commercial or industrial prior to 1959 does not invalidate Kentucky's substantial interest in aesthetics. The addition of a sign on an existing building or in an area zoned industrial or commercial is only incremental damage to the environment; a sign erected on a site with no buildings creates a new insult to the countryside. "Even if some visual blight remains, a partial, content-neutral ban may nevertheless enhance the [state's] appearance." *Taxpayers for Vincent,* 466 U.S. at 811, 104 S.Ct. at 2132. *See, e.g. John Donnelly & Sons,* 639 F.2d at 12–13 (on-premises signs are least aesthetically offensive because a structure has already violated the landscape); *E.B. Elliott Advertising Co.,* 425 F.2d at 1151 (fact that ordinance prohibits commercial advertising signs in industrial and commercial areas while permitting point of sale signs does not destroy its reasonable relationship to constitutionally permissible objectives). By restricting the exception for on-premises signs to the activities carried on at the premises, the regulatory scheme reduces the number of such on-premises signs to those where the activity needs a

---

**14.** The Court also noted that by not extending the ban to all locations, the city preserved a significant opportunity to communicate.

**15.** In *Metromedia,* the plurality concluded that the city did not defeat its interest in traffic safety and aesthetics by permitting on-premises advertising and other specified signs. According to the plurality, "the city may believe that offsite advertising, with its periodically changing content, presents a more acute problem than does onsite advertising." *Metromedia,* 453 U.S. at 511, 101 S.Ct. at 2894.

**596**

sign. If it doesn't, then there will be that many fewer signs.

## IV.

█ The final consideration in evaluating a time, place, or manner restriction is whether the restriction "leave[s] open ample alternative channels for communication of the information." *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984). The magistrate in the present case incorrectly concluded that the Supreme Court's decision in *Metromedia* controlled the outcome of this case. There, the plurality recognized that billboards are unique advertising devices that cannot easily be replaced by newspapers, television, or leaflets. Nevertheless, the San Diego ordinance in *Metromedia* imposed a city-wide ban on most signs. Indeed, the concurrence construed the ordinance as a total ban on billboard advertising. 453 U.S. at 525–26, 101 S.Ct. at 2901–02. Similarly, in *John Donnelly & Sons*, 639 F.2d 6, the Maine statute prohibited all signs except those authorized in the statute.[16] Unlike the Maine statute and the San Diego ordinance, the Billboard Act and regulations leave open ample alternatives for communication of non-commercial and commercial messages. The prohibition against off-premises signs in the Billboard Act and regulations does not apply in areas zoned commercial or industrial prior to September 21, 1959. Signs unrelated to an on-premises activity are permitted in urban areas provided that the sign is located more than 660 feet from the interstate highway. Non-commercial and commercial messages are permitted anywhere provided that an activity relating to the message is conducted on the premises. Finally, the restrictions do not regulate the erection or maintenance of signs other than in areas near interstate or federal-aid primary highways. *See City of Renton*, 106 S.Ct. 925 (ordinance limiting adult theaters left reasonable alternative avenues of communication because ordinance left five percent of the

city open for use as adult theaters); *State v. Lotze*, 92 Wash.2d 52, 593 P.2d 811 (1979) (statute prohibiting all signs within 660 feet of interstate, federal-aid primary, and scenic highways excepted from restriction signs in commercial or industrial areas and signs advertising sale or lease of property and activity on property on which they were located, and directional and official signs in view of scenic highways, left ample alternative channels of communication). Although the cost of erecting a sign may be greater in unprotected areas, the first amendment "requires only that [Kentucky] refrain from effectively denying [appellees] a reasonable opportunity to [erect a sign within Kentucky]." *City of Renton*, 106 S.Ct. at 932. The Billboard Act and regulations do not effectively deny appellees a reasonable opportunity to erect a sign with a religious or political message.

## V.

Accordingly, the judgment of the District Court is REVERSED.

---

**16.** As discussed above, these exceptions included memorial and historical plaques, signs iden-

tifying bus stops, political campaign signs, and signs announcing auctions and fairs.