774 F.Supp. 1559 (1991)
Margaret P. GILLEO, Plaintiff,
v.
CITY OF LADUE, Edith J. Spink, Mayor of the City of Ladue, Thomas R. Remington, George L. Hensley, Gale S. Johnston Jr., Robert A. Wood, Robert D. Mudd, George Fonyo, as Members of the City Council of the City of Ladue, Defendants.
No. 90-2396-C-7.
United States District Court, E.D. Missouri, E.D.
January 7, 1991.
*1560 Martin M. Green, Mitchell A. Margo, Green, Hoffmann & Dankenbring, Clayton, Mo., for plaintiff.
Jordan B. Cherrick, Armstrong, Teasdale, Schlafly & Davis, St. Louis, Mo., for defendants.

MEMORANDUM AND ORDER
HAMILTON, District Judge.
This matter is before this Court on Plaintiff's motion for a preliminary injunction to prohibit the enforcement of Ladue City Ordinance 35, Articles I and II. Plaintiff brought this action pursuant to 42 U.S.C. § 1983, challenging the constitutionality of Ordinance 35.
On December 8, 1990, Margaret Gilleo (hereinafter Gilleo), a resident of the Willow Hill subdivision in Ladue, Missouri, placed a 24" × 36" sign in her front yard. The sign read, "Say No to War in the Persian Gulf, Call Congress Now." The sign disappeared from her yard, and Gilleo put up a second sign. This sign was taken down and thrown on the ground about ten feet from where it initially had been placed.
Having reported the apparent vandalism to the Ladue police, Gilleo went to the Ladue City Hall concerning the matter. When asked what the sign said, Gilleo stated its message and was then referred to the City Clerk. Although the Clerk was not present at City Hall, Gilleo was given a copy of Ordinance 35 (hereinafter the ordinance), an ordinance relating to the placement of signs within the City of Ladue.[1] The ordinance prohibited all signs except those specifically exempted from the prohibition.[2] The ordinance also permitted application *1561 for variation from its provisions.[3] After reading the ordinance, Gilleo returned to City Hall the following day and asked to see the Clerk. Because he was absent from City Hall, she was referred to the Chief of Police. He informed Gilleo that he lacked authority to grant variation from the sign ordinance and suggested she petition the City Council.
On December 17, 1990, Gilleo petitioned the City Council, requesting a permit for unnecessary hardship under § 35-5 of the ordinance. This was the first such request received for a variation from a resident concerning a sign in the resident's own yard. Other variation requests had related to commercial signs in commercially zoned areas of Ladue. The City Council, by a unanimous vote, denied Gilleo's request for a variation.
On December 21, 1990, Gilleo filed a Motion for Temporary Restraining Order and Preliminary Injunction, challenging the ordinance as violative of the First Amendment of the Constitution. Plaintiff's motion for a temporary restraining order was denied. This Court held a hearing on the motion for preliminary injunction on December 26, 1990.
Before issuing an injunction this Court must consider (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and any injury that granting the injunction will inflict on the other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest. Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109, 113 (8th Cir.1981).
The statutory framework for sign regulation in Ladue establishes a general prohibition against signs. §§ 35-3; 35-6. It then enumerates specific exemptions to that prohibition. Political signs or issue-related signs, such as Gilleo's, fall under the general prohibition. Various exemptions, however, specifically allow "for sale" and "for rent" signs; subdivision identification signs; certain road signs; municipal signs; residence identification signs; and health inspection signs. §§ 35-2; 35-12. The issue before this Court is whether the ordinance abridges Plaintiff's freedom of speech.
Government has no power to restrict expression because of its message, its ideas, its subject matter, or its content. Police Dept. of Chicago v. Mosley, 408 U.S. 92, 95, 92 S.Ct. 2286, 2289, 33 L.Ed.2d 212 (1972). However, signs, like billboards, combine communicative and noncommunicative aspects, and government has a legitimate interest in regulating noncommunicative aspects. Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 502, 101 S.Ct. 2882, 2889, 69 L.Ed.2d 800 (1981). Regulations concerning the time, place, and manner of speech are permissible if they advance a significant government interest, if they are justified without reference to the content, and if they leave open alternative means of communicating the information. Id. at 516, 101 S.Ct. at 2897.
In Metromedia, Inc. v. City of San Diego, the Supreme Court considered whether a city government could limit on-site bill-boards to those containing commercial messages related to the on-site business, thus effectively prohibiting noncommercial speech.[4] The Court recognized that non-commercial speech is accorded greater protection under the First Amendment than is commercial speech. Id. at 513, 101 S.Ct. at 2895. With regard to the city ordinance *1562 provisions that permitted commercial bill-boards but prohibited noncommercial bill-boards, the Court observed that
[t]he city does not explain how or why noncommercial billboards located in places where commercial billboards are permitted would be more threatening to safe driving or would detract more from the beauty of the city. Insofar as the city tolerates billboards at all, it cannot choose to limit their content to commercial messages; the city may not conclude that the communication of commercial information concerning goods and services connected with a particular site is of greater value than the communication of noncommercial messages.
Id.
In addition, because, under the ordinance's exemptions to its general ban on signs containing noncommercial advertising, some noncommercial messages might be conveyed on billboards throughout commercial or industrial zones, San Diego was impermissibly choosing "the appropriate subjects for public discourse...." Id. at 515, 101 S.Ct. at 2896. Thus, by permitting exceptions to the general ban contained in the ordinance, San Diego had necessarily conceded that some communicative interests were stronger than its competing interests in aesthetics and traffic safety. Id. at 520, 101 S.Ct. at 2899. In finding the San Diego ordinance unconstitutional on its face, the Court cautioned that it was the general prohibition that created the infringement on freedom of speech, not the exceptions. Id. at 520-521, 101 S.Ct. at 2899.
The First Circuit Court of Appeals followed Metromedia in Matthews v. Town of Needham, 764 F.2d 58 (1st Cir.1985). Town residents challenged the validity of town bylaws barring the posting of political signs on residential property. Signs expressly permitted included those denoting the name and/or profession of the owner or occupant of the building, temporary signs erected for a charitable cause, temporary signs relating to the sale, rental or lease of the premises or stating the name and address of the parties involved in construction on the premises, and one bulletin board for and on the premises of a public, charitable, or religious institution. Matthews, 764 F.2d at 59. The Matthews court held that the bylaw discriminated on the basis of content, in that it permitted sale, rental, and lease signs, professional office signs, contractors' advertisements, and signs for charitable or religious causes, but it prohibited political signs in all districts of the town. Id. at 60. The court recognized that, by giving more protection to commercial speech than to noncommercial speech, the bylaw inverted a well-established constitutional principle. Id. at 61. It therefore affirmed the lower court's finding that, because the bylaw violated the first amendment guarantee of freedom of speech, it was unconstitutional on its face.[5]
In the case at bar, the Ladue ordinance exhibits the same constitutional defect discussed in the Metromedia and Matthews opinions. The ordinance bans all signs not expressly authorized. §§ 35-3; 35-6. Necessarily included in this prohibition is a ban on all noncommercial speech and, specifically, on political or issue-related signs such as Plaintiff seeks to erect in her yard. This clearly infringes freedom of speech. See, e.g., Metromedia, 453 U.S. at 520, 101 S.Ct. at 2899.
Moreover, a consideration of the exemptions to the general prohibition of the ordinance confirms that the infringement rises to the level of a constitutional violation. First, by permitting commercial signs, that is "for sale" or "for rent" signs, the City has impermissibly concluded that the communication of commercial information is of greater value than the communication of noncommercial messages. Secondly, the ordinance does exempt certain signs bearing *1563 noncommercial messages such as municipal signs, subdivision identification signs, residence identification signs, certain road signs and health inspection signs. This content selectivity with respect to noncommercial speech, however, allows the City to determine "which issues are worth discussing or debating...." Mosley, 408 U.S. at 96, 92 S.Ct. at 2290. Such action by a government contravenes the First Amendment for "[t]o allow a government the choice of permissible subjects for public debate would be to allow that government control over the search for political truth." Consolidated Edison Co. of N.Y., Inc. v. Pub. Serv. Comm'n of N.Y., 447 U.S. 530, 538, 100 S.Ct. 2326, 2333, 65 L.Ed.2d 319 (1980). Thus, the exemptions from the ordinance, which attempt to regulate signs in the City, lack content-neutrality and thereby render the ordinance unconstitutional on its face.
Defendants assert they have a right under their police power to prohibit lawn signs to protect the privacy, safety, and aesthetic interests of Ladue. Defendants urge this Court to follow the decisions in Lehman v. City of Shaker Heights, 418 U.S. 298, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974) and Greer v. Spock, 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976). Both cases are distinguishable, however, in that they involved public fora and specific government-created environments such as public transit vehicles and military bases. See Metromedia, 453 U.S. at 514, n. 19, 101 S.Ct. at 2896, n. 19.
Defendants further contend that the ordinance is both content and viewpoint neutral and that its general prohibition against signs with specified exceptions is justified by privacy, safety, and aesthetic interests. An ordinance that completely bans all political speech but that permits certain forms of commercial speech is not, however, content-neutral. See Metromedia, 453 U.S. at 516-17, 101 S.Ct. at 2897. Therefore, an analysis for a time, place, and manner restriction is both unnecessary and inappropriate.
Defendants also assert that their interests in privacy, safety, and aesthetics are compelling interests that would allow the ordinance to withstand constitutional scrutiny under the test announced in Boos v. Barry, 485 U.S. 312, 108 S.Ct. 1157, 1164-68, 99 L.Ed.2d 333 (1988). Boos, however, dealt with content-based regulation of political speech in a public forum, not with a resident attempting to exercise free speech in her own yard in a residential area.[6]
Similarly, the cases cited by Defendants to assert a "communal" privacy interest of the residents of Ladue are inapposite. Defendants cite Carey v. Brown, 447 U.S. 455, 470-71, 100 S.Ct. 2286, 2295-96, 65 L.Ed.2d 263 (1980); Rowan v. United States Post Office Department, 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970); Kovacs v. Cooper, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949); and Pursley v. City of Fayetteville, Arkansas, 820 F.2d 951, 955-56 (8th Cir.1987). Each recognizes the state's interest in protecting the privacy interests and domestic tranquility of the individual property owner from outside interruptions. None imposes restrictions on an individual property owner as is the case with the Ladue sign ordinance.
In Rowan v. United States Post Office Department, the Supreme Court upheld the portion of the Postal Revenue and Federal Salary Act that allowed an addressee to request the post office to order the sender of unwanted "erotically arousing or sexually provocative" material to refrain from further mailings to the addressee. Rowan, 397 U.S. at 730, 90 S.Ct. at 1487. The Court noted that Congress provided sweeping power to the individual addressee to avoid vesting the power to make any discretionary evaluation of the material in a governmental official. Id. at 737, 90 S.Ct. at 1490. Thus, the challenged statute in Rowan avoided placing content-based *1564 discretion in the hands of the statute drafters or those charged with enforcement.
Unlike the present case, Kovacs v. Cooper, Carey v. Brown, and Pursley v. City of Fayetteville, Arkansas, all involve regulation of public fora. In Kovacs, the Court, recognizing the state's interest in protecting privacy, upheld an ordinance banning loud speakers and amplifiers on trucks on public streets. The Court balanced the need for reasonable protection in the home against the intrusive nature of the distracting noise of vehicles equipped with sound devices. Kovacs, 336 U.S. at 89, 69 S.Ct. at 454. The Court also noted that this was not a total ban on all sound trucks because they were still allowed in other traditional public fora such as parks or other open places. Id. at 85, 69 S.Ct. at 452. In both Carey v. Brown and Pursley v. City of Fayetteville, Arkansas, the courts found the challenged ordinances unconstitutional while recognizing government's interest in protecting privacy. Both involved ordinances barring picketing. In Carey, the Supreme Court held unconstitutional a state statute that generally banned picketing but exempted labor picketing. The Court determined that because the statute discriminated on the basis of the subject matter or content of the expression, it did not advance a legitimate objective, privacy, in a manner consistent with the Equal Protection Clause. Carey, 447 U.S. at 471, 100 S.Ct. at 2295. Finally, in Pursley, the Eighth Circuit Court of Appeals struck down a general ban on picketing in front of residences. The court recognized a reasonable time, place, and manner regulation might be appropriate to protect privacy and the sanctity of the home. Pursley, 820 F.2d at 955. The court found, however, that this absolute ban was not narrowly tailored and was void for overbreadth. Id. at 956, 957. While privacy, safety, and aesthetic interests are recognized justifications for content-neutral restrictions, the Ladue ordinance in question is not content-neutral. See City Council v. Taxpayers for Vincent, 466 U.S. 789, 807, 104 S.Ct. 2118, 2130, 80 L.Ed.2d 772 (1984).
Because Ordinance 35 impermissibly places greater value upon commercial than noncommercial speech and impermissibly values the content of certain noncommercial speech over that of other noncommercial speech, it is unconstitutional on its face.
It appears to the Court that the continued enforcement of Ladue Ordinance 35 will irreparably harm Plaintiff. Similarly, it appears that Plaintiff will ultimately be entitled to a judgment declaring the ordinance unconstitutional on its face. The Court concludes that the Defendants should be enjoined preliminarily from enforcing Ordinance 35.
Therefore, IT IS ORDERED that an injunction issue, without security therefor.
NOTES
[1] The ordinance defines "sign" as

A name, word, letter, writing, identification, description, display model, special lighting arrangement, or illustration which is placed upon, affixed to, painted or represented upon a building or structure, or any part thereof, or in any manner upon a parcel of land or lot, and which publicizes an object, product, place, activity, person, institution, organization or place of business. The word "sign" shall also include "banners", "pennants", "insignia", "commercial signs", "bulletin boards", "ground signs", "poster billboards", and "electric signs", wherever placed.
[2] Section 35-3 provides: No sign shall be erected, constructed, painted, placed, enlarged or relocated except in conformity with the provisions of this chapter nor until a permit has been issued; provided that the repainting of display matter shall not be deemed a change.

Section 35-6 provides:
There shall be no commercial billboards in the city; and no person shall construct, erect, place, paint, display or maintain any sign for display or advertising by means of ground sign boards, free standing signs, roof sign boards, wall signs or bulletins, window signs, illuminated signs, or any other signs, whether or not of the classes herein listed, within the city, except as herein expressly authorized.
The signs hereinafter authorized shall not include, and it shall be unlawful to install, construct, place, display or continue to maintain any sign which is moving, flashing or animated.
Section 35-2 provides exemptions from the general provision as follows:
The following signs are exempted from the provisions of this chapter:
(a) All municipal signs.
(b) Subdivision identification signs of a permanent character and road signs for danger, direction or identification.
(c) Signs not exceeding one (1) square foot of display surface on a residence building stating only the name and profession of an occupant.
(d) Health inspection signs.
(e) Real estate signs authorized by section 35-12. (Ord. No. 812; § 16, 1-21-63)
Section 35-12 permitting "for sale" signs states in pertinent part: "It shall be permissible for the owner or authorized agent of premises to erect a ground sign advertising the sale or rental of the premises upon which it is maintained; but such sign shall not be attached to any tree, fence or utility pole, shall contain no other advertising matter and shall be not more than two (2) feet in height by three (3) feet in length."
[3] Section 35-5 provides for variation of the chapter provisions: "The council may grant a permit required by this chapter and permit a variation in the strict application of the provisions and requirements of this chapter where there are practical difficulties or unnecessary hardships, or where the public interest will be best served by permitting such variations."
[4] The Court also addressed whether the city could prohibit all off-site commercial bill-boards. The Court held that the city could prohibit all off-site commercial billboards while permitting on-site billboards. Metromedia, 453 U.S. at 512, 101 S.Ct. at 2895.
[5] Plaintiffs also rely on Meros v. City of Euclid, 594 F.Supp. 259 (N.D.Ohio 1984), vacated, 780 F.2d 1020 (6th Cir.1985). The Sixth Circuit Court of Appeals vacated the decision as moot because the Ohio Court of Appeals in City of Euclid v. Mabel, 19 Ohio App.3d 235, 484 N.E.2d 249 (1984) declared the ordinance unconstitutional. The ordinance prohibited political lawn signs but allowed "for sale" and "for rent" signs. The state court of appeals concluded it was unconstitutional under either a facial analysis or a competing interests analysis.
[6] In Boos the Court said that content-based restrictions on political speech in a public forum must be subjected to exacting scrutiny. The government must show that the regulation is "necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." Boos, 108 S.Ct. at 1164 (quoting Perry Education Ass'n v. Perry Local Educators Ass'n, 460 U.S. 37, 45, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983)).